Clark
v.
Vorce.

---

CLARK and wife <em>vs.</em> VORCE.

Where a person called to prove the testimony of a *deceased* witness, given on a former trial, produces in court minutes of such testimony taken by him at the time, and states that he intended to take down the words of the witness, and all that he deemed material, but could not say that he had taken his precise words or every word of the testimony ; and that he could not now swear to the testimony, except from his minutes ; *it was held*, that such evidence was admissible to prove the testimony of the deceased witness.

A witness may be *re-examined* by the party calling him even *after a cross-examination*, as well for the introduction of *matter new in itself* as for the purpose of explaining the expressions or the motives of the witness, where the omission to examine him as to such new matter, when first called, arose from *inadvertence* or other cause, to be approved by the court.

THIS was an action of *ejectment*, tried at the Yates circuit in December, 1834, before the Hon. DANIEL MOSELEY, one of the circuit judges.

NEW-YORK,
May, 1836.

Clark
v.
Vorce.

The plaintiffs in right of the wife, as one of the heirs at laws of *Allen Vorce,* claimed to recover the one-seventh of the premises in question, held by the defendants by devise under the last will and testament of their father, *Allen Vorce,* by which *all* his real and personal property was given to them. The testator left six children and three grand-children, the children of a deceased son ; his property was worth $7500, consisting principally of real estate, his personal property being valued at $1000. He gave a legacy of $1000 to his eldest son, *to two of his daughters each* $500, *to* another daughter $450, and to his grand-children $500, to be divided between them. The legacies to be paid within 20 years after his decease, *but no interest* until 20 years after his decease. The residue of his property, real and personal, he gave to his two sons, the defendants in this cause. The plaintiffs attempted to prove the testator *insane* at the time of the making of his will, and many witnesses were examined on each side. In the progress of the trial, *Gilbert Drew,* one of the subscribing witnesses to the will, was called by the *defendants* and testified fully to the *sanity* of the testator. He was cross-examined by the plaintiffs' counsel ; and then, after two other *witnesses* had been called and examined by the defendants, they recalled him, and their counsel stated that when the witness was upon the stand, they had inadvertently omitted to put an important question to him, and now wished to prove by him that before the sickness of the testator, and about six weeks previous to the making of the will, the testator told the witness that he meant to give all his real estate to the defendants in this cause, and that they should pay legacies to the other children. The counsel for the plaintiffs objected to the *re-examination* of the witness, and the objection was sustained by the judge. The defendants also offered to prove the testimony of one John Haight, a *deceased witness,* given on a former trial of this cause, and for that purpose called a witness who stated, that on the former trial he acted as counsel for the defendants, and took very full and particular minutes of Haight's testimony ; that he intended at the time to take down the words of Haight, but could not pre-

tend to give his precise words; that he could not swear to

Haight's testimony, except from the minutes taken by him on that trial, and could not now testify that he had taken down every word of his testimony, but he intended at the time to take down all he regarded as material. The counsel for the plaintiffs objected to the reading of the minutes of the witness of the testimony of Haight, on the ground that the witness could not testify to all of Haight's testimony, nor with sufficient certainty as to what Haight swore to on the former trial. The judge decided that the evidence thus offered was not admissible. The jury found a verdict for the plaintiffs.

*H. A. Wisner*, for defendants, asked for a new trial, on the grounds that the re-examination of the witness should have been allowed; that the evidence offered to prove the testimony of the deceased witness should have been received; and that the verdict was against evidence.

*H. Welles*, for plaintiffs, who, in support of the decision of the circuit judge excluding the proof offered of the testimony of the deceased witness, cited 1 *Phil. on Ev.* 215, where it is said that the person called to prove what a deceased witness said, must undertake to repeat precisely his very words, and not merely to swear to their effect. This rule, he contended, was recognized in *Wilbur* v. *Selden*, 6 *Cowen*, 164.

*By the Court*, SAVAGE, Ch. J. With respect to the testimony of a deceased witness, the rule is laid down with much strictness; but if nothing will answer, but an exact transcript of the testimony of the witness in his very words, and all his words, it will exclude all such testimony. There are few or no cases where a cautious and prudent man will swear that his notes of testimony of a witness, taken down at the time, contain his very words, and all his words. It seems to me that Mr. Whiting's notes should have been received, connected with his oath, as to their accuracy. It was his intention at the time to take down the words of the witness—not the substance or legal effect of his testimony. The reason assigned in 4 *Serg. & Rawle*, 203, against receiving the notes of

NEW-YORK,   counsel is not applicable to this case.   Here it was the inten-
May, 1836.   tion of the witness to take down, not the substance, but the
Clark        words of the witness.   The offer in this case comes within
v.           the rule as stated in *Wilbur* v. *Selden*, 6 *Cowen*, 164.   The
Vorce.       witness was ready to swear to his belief of the accuracy of
his minutes, and it was his intention to take down the words
of the deceased witness.

As to the *re-examination* of Gilbert Drew: there must neces-
sarily be a large discretion in the judge as to the examination
of witnesses.   The object of a trial is to ascertain all the facts
relating to the issues joined.   It is the duty of counsel to ex-
amine a witness to his whole case when he calls him; but if
counsel calls a witness who knows facts to sustain several
points in his client's case, inadvertently omits to examine
the witness to one point, until after he has been cross-exam-
ined, there is surely no reason in the policy of the law against
a further examination.   It may, perhaps, be inconvenient to
the judge and opposing counsel, to enter into the further ex-
amination, but that is not a sufficient reason why the party
calling the witness should be deprived of material testimony.
Is it not consistent with justice that a party should lose his
cause, because the testimony is not introduced with strict
technical precision, or that it may possibly give additional
trouble in taking notes of the testimony.   It seems to me that
too much pertinacity in a strict adherence to arbitrary rules
is sometimes grasping the shadow and letting go the sub-
stance.   Justice is always best administered by a liberal in-
dulgence to parties in the production and examination of
their witnesses.   But the actual existence of the rule itself
is perhaps questionable.   Mr. *Starkie* says that, after a wit-
ness has been cross-examined, the party calling him has a
right to re-examine him to explain the cross-examination,
and the witness' expressions, and his motives for using them;
" but he has no right to go further, and to introduce matter
new in itself, and not suited to the purpose of explaining
either the expressions or the motives of the witness."   3 *Star-
kie's Ev.* 1751.   For this rule he refers to the *Queen's* case,
2*Brod. & Bing.* 297.   The rule itself is of very recent date,
and I am not aware that it has ever received the sanction of

NEW-YORK,
May, 1836.

Clark
v.
Vorce.

this court. I do not believe that such extreme strictness is best calculated to elicit truth, or to promote the ends of justice. It cannot be right that a party should be deprived of material testimony because his counsel inadvertently omitted to examine a witness to all the facts within his knowledge, during his direct examination, and previous to a cross-examination. It is no answer to a party who is ruined by an erroneous verdict of a jury, that his counsel did not put the questions to his witnesses, precisely as he ought, in order of time. In this case, the examination of witnesses was not closed, and there is no good reason appearing upon the case why the testimony should not have been received. If such a rule should be strictly adhered to, a witness may not have given half his testimony before his mouth is sealed. In my opinion, the testimony should have been received. I am aware that, sometimes, testimony may be intentionally withheld by the counsel calling a witness, until the witness has been cross-examined. My remarks do not apply to such a case, but to the case of inadvertence, or perhaps ignorance of the facts, within the knowledge of the witness.

Having arrived at the conclusion that a new trial should be granted, it is unnecessay to go into a particular examination of the testimony, to ascertain whether the verdict is supported by it. I will, however, remark that if a testator is to be proved insane by circumstances such as are relied on here, few wills would stand the test; and that, had the testator made an equal distribution of his property, he would probably not have been suspected of insanity. His disposition of his property is certainly very strange; but, generally speaking, a man may dispose of his property as he pleases. The verdict, I think, is against the weight of evidence.

New trial granted.