## BARTLETT *v.* HOYT.

Objections of a formal character to a deposition which has been used at a former trial, without objection, are to be considered as waived.

Upon the second trial, a deposition will not be rejected for want or defect of the caption, when it appears that the party objecting attended at the taking, and made no objection to its use at the former trial.

It is not necessary to set forth in the caption that the taking *commenced* at the hour designated in the notice. It is sufficient if it be certified that it was *taken* at that hour.

It is no ground of objection to the use of a deposition at the second trial, that it was filed with the clerk prior to the first, was withdrawn from the files at that trial, not then used, and has never been restored to the files.

A question to a witness, proposed in the form, "whether or not," is not ordinarily objectionable as leading. It may be so when proposed in that form, if it be otherwise in such terms that, from the nature of the question, in connection with its subject matter, it suggests to the witness the answer desired.

When a statement of the adverse party is offered in evidence, and objected to on the ground that it is an offer or proposition for the settlement of a controversy, the preliminary question, whether the statement was intended by the party making it as an admission of a fact, and not merely an offer to compromise, may be determined by the court, or, in their discretion, it may be submitted to the jury, with proper instructions to disregard it, if they find it to have been merely such offer or proposition, and to weigh it as evidence, if intended as such admission.

A witness, who has been accustomed to receive goods from time to time, forwarded to him to be sold for the owner on commission, is at liberty to testify as to the amount of goods and time of receiving them, by referring to the bills received by him with the goods, which bills he compared with the goods, as received, and then knew to be correct as to amount and dates, and which he can identify from memoranda then made by him upon them, although at the time of testifying he has no recollection of the amounts or dates, independent of the bills.

The plaintiff's hay in the freight-house of a railroad company, in charge of a servant employed to attend to the receipt and delivery of goods there, was taken, through the mistake of the servant, by him and the defendant, from the freight-house, and sent away as the defendant's:

*Held*, that the servant was a competent witness for the plaintiff in an action of trover for the hay thus taken.

*Held*, also, that the action could be maintained without proof of a demand upon the defendant for the hay, although it appeared that the defendant supposed the hay to be his own, and that this was known to the plaintiff.

TROVER, for ten bundles of pressed hay. Plea, the general issue.

The hay in question was a portion of a lot which grew on the Durham town farm in the summer of 1851. When cut it was sorted—the best of it being put into the two south joints of the barn, and this was pressed and sold to the plaintiff, and by him hauled to the freight-house of the Boston and Maine railroad in Durham—the last two loads being drawn in February, 1852, all of which had been sent to Boston except ten bundles,—a part of the last two loads,—which remained stored in said freight-house.

One Albert W. Clark was the person in the employment of the railroad company having charge of the freight-house, and in his absence one Allen Bangs had the charge. On the evening of the 11th of February, 1852, the defendant, having a considerable quantity of hay in said freight-house, wanting twelve bales of his hay to make out a car-load which he proposed to send to Boston the next morning, went to the freight-house with Bangs in Clark's absence, and took twelve bales, and among them the plaintiff's ten, and sent them by the cars to Boston, — Bangs assisting in loading them upon the cars. The next day Clark informed the defendant that he had taken the plaintiff's ten bales, and the defendant thereupon directed Clark to take out ten bales of the best of his (the defendant's) hay in the freight-house, and send it to Boston with other hay which the plaintiff might have to be so sent, in place of the ten bales so taken by the defendant. This was done by Clark, and the ten bales thus substituted were sold by E. Nute, the plaintiff's consignee in Boston, on his account, with the hay of the plaintiff forwarded at the same time. Ten bales of this hay were sold by Nute for a less price than the other hay, being of an inferior quality; and it was a matter in controversy between the parties, and in relation to which there was conflicting evidence, whether the ten bales of inferior quality were or not the ten bales which Clark took from the defendant's hay and substituted for the ten bales of the plaintiff's taken by the defendant. The plaintiff's evidence tended to show that he knew nothing of this exchange until after the hay had been sold out in Boston by Nute, and that he never assented to it. Nute settled with the plaintiff for

Bartlett *v.* Hoyt.

all the hay except the ten bales of inferior quality, and for these he offered to pay to the plaintiff the amount received by him for it. This the plaintiff declined to receive, on the ground that the ten bales were the defendant's, and that he knew nothing of the exchange, and never assented thereto.

The plaintiff offered in evidence the deposition of said Albert W. Clark, to which the defendant objected. 1. Because no caption was produced ; 2. Because the witness was interested ; the defendant claiming that because the witness was the person in charge of said freight-house, he was responsible for a wrongful delivery of the goods stored therein.

It was admitted that the defendant was present at the taking of the deposition, and cross-examined the deponent, and that the deposition had been used at a former trial of this cause, without objection. The plaintiff also offered the deposition of said Bangs, to which the defendant objected. 1. Because, it being taken before the former trial, was put on the clerk's files, withdrawn therefrom, not used at the former trial,—the deponent being upon the stand as a witness,— and was not put on file subsequently before it was offered at this second trial. 2. Because it does not appear by the caption at what hour the taking commenced ; and, 3. Because the witness is interested in the same way as Clark by acting for him in delivering out the hay.

The court overruled the objections, and admitted the depositions.

The plaintiff's counsel proposed to G. Nute, a witness introduced on the part of the plaintiff, the following interrogatory, viz.: " State whether or not the hay which you saw Demeritt's team hauling to the Durham depot, was a part of the lot you have described as sent by the plaintiff to your brother, E. Nute, in Boston." The defendant's counsel objected that the question was leading. The court overruled the objection, and allowed the question to be put in that form.

This witness having testified that he had a conversation with the defendant in relation to the hay in question, since the commencement of this suit, in which he asked the defendant if he

and the plaintiff were likely to settle, — the defendant objected, that the statement in reply was merely an offer to compromise the suit. The court having intimated an opinion upon the admissibility of the statement, the plaintiff desired the court to submit the question to the jury under proper instructions, as to whether the defendant's statement was an admission of a fact, or an offer for a settlement. To this the defendant objected, claiming that it was for the court alone to decide upon the admissibility of the evidence. The court overruled the objection, and submitted the question to the jury, instructing them that the distinct admission of an independent fact, during an attempt to compromise, was proper evidence for them to consider; but that an offer made for the purpose of effecting a settlement, was incompetent to be considered by them as evidence; that they must take the whole statement together, in order to ascertain the meaning of the party making it, and then they must inquire and consider what were the views and intention of the defendant in making it; that if, viewing it in this way, they should find that what the defendant then said was intended by him as an admission of a fact, then it was to be considered by them as evidence; otherwise they would lay it out of the case.

The defendant, upon the cross-examination of E. Nute, inquired if he had not offered to the plaintiff the money he had received for the ten bales of inferior hay; to which the witness replied that he had, but the plaintiff refused to take it.

The plaintiff's attorney, on resuming the direct examination of the witness, asked what the plaintiff said when he refused to take the money, and why he refused to take it? The witness answered, that when he offered the money to the plaintiff, he refused to take it, because he said that the hay was not his, but the defendant's. The defendant objected to the competency of this evidence, but the court overruled the objection, and admitted it.

This witness was also asked by the plaintiff's attorney to state how much hay he received from the plaintiff in February, 1852, on what days he received it, and how many bales each car load

contained.  In reply, the witness stated that he received hay from the plaintiff that month, but that he could not state the number of loads, the days of the month on which received, nor the number of bales in each load, without consulting certain bills in his possession, which were not in his hand writing, nor made in his presence, but which he knew to be correct, as to the dates and amount of hay received, from having made an examination of the loads as each arrived, and compared the amounts with the bills received by him at the times when the hay was forwarded, and making certain entries upon them in pencil in his own hand ; that he could swear that the bills were right, and was willing to testify from them as to the times and amounts, although he had no recollection of them independent of the bills.

The defendant objected, that the witness could not be permitted to aid his memory by referring to the bills ; but the court overruled the objection, and permitted him to consult the bills, and answer as to the dates and amounts upon that examination of the bills.

The defendant offered to prove that the hay which grew upon the Durham town farm in 1851 was poor hay, much of it white grass, and that the hay which was taken from that farm to the Durham depot in the winter of 1851–2 was of poor quality ; but without offering any proof as to the quality of the last two loads, of which the ten bundles constituted a part.  The court excluded the testimony, as incompetent.

The defendant also offered to prove that on the 12th of February, 1852, Clark, on his return, after the ten bundles had been taken by the defendant and Bangs, censured Bangs for letting the defendant take the hay the evening before ; and that Bangs thereupon said to Clark that he (Clark) had the day before pointed out to him (Bangs) the ten bales as the plaintiff's Chesley hay, and that, to this statement of Bangs, Clark made no reply.  But the court excluded the testimony.

The defendant requested the court to instruct the jury —

1. That this action could not be maintained without proof of a demand by the plaintiff upon the defendant, for the hay, or the pay for the same.

2. That the action could not be maintained unless it were shown that the ten bales of bad hay, received by Nute, were the defendant's hay, as the plaintiff had sold and taken pay for all the rest.

3. That if the hay was taken by the defendant by mistake, and the plaintiff knew this, he must make and prove a demand upon the defendant for the hay, or the pay for it.

But the court declined thus to instruct the jury, and did instruct them that if the jury found that the defendant wrongfully took the plaintiff's hay and sent it to Boston, that would constitute a conversion, in law, without demand, and refusal to deliver it. To which rulings, refusals and instructions, the defendant excepted. The jury returned a verdict for the plaintiff, which the defendant moves to set aside.

*Christie & Kingman,* for the defendant.

It will appear from an examination of the case that the defendant had in the depot, at the time of the alleged conversion, a large quantity of pressed hay, consisting of lots bought of different individuals; which several lots the depot-master had stored in such a manner as to be able to distinguish them from one another; while the plaintiff had but ten bales in all in the depot.

The defendant, returning from Boston on the evening of the 11th of February, and finding a car partly loaded, and wishing to send a full load early the next morning to Boston, went into the freight depot, with the person having charge of it, and assisted in loading twelve bales, required to make up the car load.

The defence is, that he did in fact get his own hay; and if not, that he took only such as the person having the care of the freight depot delivered to him as his own; and that trover will not lie against this defendant, until after his possession is made a *wrongful detention* by a demand and refusal.

To sustain this defence, the defendant offered to prove that Bangs, who had charge of the freight depot at the time, pointed

out the hay which they loaded, as one of the defendant's lots, to wit., the hay he had bought of Chesley; and that when Clark, the station agent, returned from Boston, he censured Bangs for loading the wrong hay for Hoyt; to which said Bangs replied, by showing that he had loaded the hay which Clark had himself pointed out to him as Hoyt's Chesley hay.

All this evidence the court ruled out. On what possible ground could it be excluded? It is directly affirmative of both grounds of defence. But if it were not so, it should still have been received to contradict the evidence of Clark and Bangs, which was offered by the plaintiff.

There can be no doubt that the twelve bales which the defendant took, were delivered to him by the station agent of the railroad company, or by his authority, even without the evidence offered by the defendant and ruled out ; for the case finds that Bangs went into the depot and assisted the defendant in loading the hay that was loaded. Now, if a mistake was made, and the defendant got some one's hay and not his own, it was clearly the mistake of the person having charge of the depot, whose duty it was to receive and deliver, correctly, all the freight left at the depot ; and not the mistake or tortious act of the defendant. In such case, either Bangs, or the station agent, or the railroad company, or all of them, are clearly liable in trover for the wrongful delivery. 2 Greenl. Ev. 531, note 7, (1st Ed.)

If, then, the conversion of the hay in question is the wrongful delivery by the warehouse keeper, it cannot be a conversion in this defendant until he does some wrongful act in detaining it, and there can be no wrongful detention in such a case until after demand and refusal. 2 Saun. Pl. & Ev. 883; 2 Greenl. Ev. 533.

If, too, the station agent, or Bangs, or the railroad company, are liable for the wrongful delivery, then the deposition of Clark and Bangs should have been rejected on the ground of interest.

The ruling of the court in relation to the conversation of the defendant was incorrect. If the evidence does not amount to an admission of an independent fact, the jury should not be

permitted to consider it ; but under the present ruling, how is it to be known whether they considered it or not ? and whether they properly applied the rules of law given them by the court or not ? The court considered the evidence inadmissible, as appears from the case, but directed the jury to decide not only the effect of the evidence, but its admissibility also. 1 Greenl. Ev., sec. 2, (2d Ed.)

The answer of E. Nute, on reëxamination by the plaintiff, was simply allowing the plaintiff to put in his own statement as to the whole ground of action in the case, because the defendant in cross-examination asked the witness in relation to some act of his own, without allusion or reference to what the plaintiff had done or said.

The evidence of E. Nute, derived from an examination of certain bills in his possession, was inadmissible. The bills themselves should have been put into the case, and given to the jury, or the whole ruled out. The witness did not use the bills to refresh his memory, because they failed to accomplish any such purpose. According to the doctrine in *Haven* v. *Wendell,* 11 N. H. 112, the ruling was entirely erroneous.

The plaintiff sold and received pay for all the hay he ever had at the Durham depot, except ten bales of bad hay, which he alleges were not his, but were substituted by the station agent from the defendant's hay, in place of ten bales taken by the defendant.

If, now, the ten bales of bad hay were not the defendant's, then either the defendant had taken only his own hay, and could not be charged at all, or the plaintiff's agent, Nute, had sold the hay of the defendant which the station agent had substituted for what the defendant had taken ; and the settlement by the plaintiff with Nute for the hay so sold was a ratification of the substitution by the station agent, which should bar this action ; and the court should have so ruled, as requested by the defendant.

In connection with this view of the case, the evidence offered by the defendant, as to the quality of the Durham town-farm

hay, was peculiarly important, and should have been admitted. If all the town-farm hay that year was bad, then the plaintiff's ten bales in the depot were bad; and the probability that the plaintiff had got his own hay in Boston, would be much increased. It would be a question of probability, to be sure, but a proper matter for the jury to consider. The last two loads drawn to the depot could not have been of a different quality from all the rest of the hay cut on the farm that year, and the evidence should not have been confined to those two loads.

*Wheeler*, for the plaintiff.

I. The case finds that the defendant went into the depot with others, and took the hay in question, loaded it upon the cars, and sent it to Boston the next morning, to one of his customers there. In this were two acts done by the defendant, either of which, of itself, is sufficient to constitute a conversion.

1. There is a taking by the defendant, and if the property was the property of the plaintiff, the defendant had no right to take it, and it was an unlawful taking.

A demand is unnecessary if the taking is unlawful. 11 M'Cord 213, 428; 15 Johns. 431; 8 Pick 543; *Hyde* v. *Noble*, 13 N. H. 494.

This taking was a constructive trespass, which constitutes a tortious taking, for which trover lies. *Connah* v. *Hale*, 23 Wend. 462; 14 Pick. 360; 1 Chitty's Pl. 153; 15 Johns. 431; 6 Mass. 20; 6 Pick. 455; 2 Selwyn's N. P. 1071.

2. There is a carrying away of the property — removing it a great distance from the plaintiff, a selling; acts which negative and are inconsistent with the rights of the owner; and in such cases a demand and refusal are unnecessary, even though the property in the first instance came lawfully into the defendant's possession. 1 Kelly 256; 11 Ala. 233; *Flanders* v. *Colby*, 8 Foster 34.

Any use or disposition of a chattel, without the consent of the owner, and inconsistent with his right, is a conversion. *Hutchinson* v. *Bobo*, 1 Bailey 546; *Reid* v. *Colcock*, 1 N. & M. 592.

---

---

In the case of *Carr* v. *Clough*, 6 Foster 295, the court say :

" In the case at bar, the plaintiff would not be aided by a demand and refusal, for it was made after the defendant had made a sale, legally parted with his interest in the property, and when he had no power to comply with the demand."

In this case, a demand and refusal would not have aided, as the conversion was complete, the defendant having made such a disposition of the property that it was not in his power to comply with a demand.

Whenever the taking is tortious, or an actual conversion is shown, a demand and refusal are unnecessary. *Stevens* v. *Eames*, 2 Foster 573, and authorities there cited.

Had Bangs been in charge of the depot and freight, and delivered the hay to the defendant as his, defendant's, hay — (assumptions not warranted by the case,)—it would not differ in principle from the case of *Hyde* v. *Noble*, 13 N. H. 494, before cited, and many other like cases to be found in the books.

Where the defendant purchased property from another who had no power to sell it, and retained possession, claiming under the sale, it was held there had been a conversion, and that it was not necessary to show a demand and refusal.

The case of *Riley & al.* v. *Dalrymple & al.*, decided in the Supreme Court of Massachusetts, March term, 1853, Suffolk ; reported in the Law Reporter for May, 1853, page 41, that trover for gravel, &c., unlawfully removed from the plaintiff's close and sold by A to the defendant, who used it to fill up certain flats, the court held the gravel became personalty by the severance, and that trover would lie against the defendant, without a demand and refusal, although he was a *bona fide* purchaser without notice.

The intent with which the wrong was done is not in this case a subject of inquiry. *Sinclair* v. *Tarbox*, 2 N. H. 135 ; Saund. Pl. & Ev., 5th Am. ed., part 2, page 1156.

II. The acts and declarations of Bangs and Clark, as to whose was the hay in dispute, stand no better as evidence upon

that point than the acts and declarations of any other stranger or third person; neither would it make the taking of the plaintiff lawful, or relieve him from his liability because this hay was pointed out to him as his hay.

The intent is not material, and if he took the plaintiff's hay at all, he also carried it away and sold it; acts of themselves amounting to a conversion, as we have seen, even where the party came rightfully in possession.

But the case finds that the defendant went with others, &c., and (defendant) took the hay, &c. He was, therefore, at least a party to the conversion, and an action of trover may be brought against any persons who were parties to the conversion. 4 Cow. and Hill's Phil. Ev. 227.

The case does not find any thing wherein these acts or declarations of Bangs and Clark, (as the defendants,) offered to prove them, would contradict them in any respect whatever.

III. If Bangs and Clark were interested witnesses, their interest was certainly against the plaintiff. The case all rests upon whether the hay taken by Hoyt was his (Hoyt's) hay, or whether it was the plaintiff's hay. The interest of these witnesses would incline them to say that Hoyt got his own hay. Then no case could be made against them or any one else.

IV. The question of the admissibility of the conversation of the defendant was one depending upon other facts, and the court but exercised a sound discretion in taking the opinion of the jury upon them, under the very full and proper instructions which they gave them. 1 Greenl. Ev., 2d ed., sec. 49 ; 6 Foster 344.

V. The defendant himself first made inquiry of E. Nute, relative to a certain transaction between himself and the plaintiff. His answer to that inquiry revealed a part only of that transaction. It was the plaintiff's right that the jury should know the whole ; otherwise they cannot form a just estimate of its importance. 1 Greenl. Ev., 2d ed., secs. 201, 202.

If it was important that the jury should know that Nute had offered that money to the plaintiff, we think it was quite as im-

portant that they should know he did not take it, and the reason he gave at the time for not taking it.

VI. As to the evidence of E. Nute, and the bills from which he testified, we believe the ruling of the court was correct. They were original entries, made in the usual course of business, and which the witness, having all the necessary facilities, swears he examined about the time they were made, and made such comparisons that he knows they are correct. If he knows it to be correct, what more can be required ? It is like the case where a party sees a memorandum made, though he does not actually make it himself.

By his examination, and the marks he made upon the bills at the time, he made them his own memorandum. *Haven* v. *Wendell*, 11 N. H. 119.

VII. If it was true, as contended for by the defendant, that the plaintiff, in settling with Nute, had received pay for the hay substituted by the defendant for that taken, the case finds that he did it without knowing the exchange. He cannot, therefore, be said to have ratified the exchange.

A party is not to be imposed upon in this way. If the defendant had notified him of the exchange, and he, then knowing all of the facts, had accepted or sold the hay, it might with some propriety be said he had ratified the exchange.

VIII. What the defendant offered to prove in relation to the quality of the Durham town-farm hay, was of no importance one way or the other in elucidating the real question in dispute.

The case finds that the hay which grew on the Durham town-farm was assorted, and that the hay in controversy was the best of that assorted hay, and what the defendant offered to prove was a very general statement of the hay on that farm that year, without pretending any knowledge of the qualities of these two loads.

SAWYER, J. It is now understood to be a well settled rule of practice, that objections of a formal character to a deposition which has been once used upon the trial of a cause, without objection, are to be considered as waived. The caption of a dep-

osition, when it has been produced in court, and the deposition which it contained, has been permitted to be used unquestioned, has performed its office, and it would seem to be entirely idle to require that it should be carefully preserved, again to be submitted to the inspection of the adverse party, in order that he may have another opportunity to question its sufficiency, when he has already had that opportunity, and has in effect conceded it to be sufficient. The objection to Clark's deposition, that there was no caption produced, was properly overruled.

The objection to the deposition of Bangs, that it is not certified in the caption at what hour the taking *commenced*, was also properly overruled. The statute does not, in terms, require that this should be certified. If it is required, it is because it is implied in the requirement of the statute that the time of the taking shall be certified, and that this must be held to mean the time of commencing the taking. We understand, from the objection as taken, that it is stated in the caption that the deposition was *taken* at a specified hour, but that it is not stated that the taking *commenced* at any specified hour. The caption, however, follows the language of the statute, and this we think, in this particular, to be sufficient.

Nor can the objection be sustained which is founded on the facts in relation to this deposition having been put on file, taken therefrom without being used at the first trial, and not restored to the files of the clerk. We are not aware of any rule or practice which forbids the use of a deposition on the second trial, whether on file or not, when the deponent is not in attendance as a witness, because it could not be used at the first, by reason of his then being in attendance, or for any other reason which does not equally exist at the second. If inconveniences result from the use of depositions which have not been filed, or kept on file with the clerk, or which were not used at a former trial, the corrective should be applied in the form of a rule established and promulgated for the regulation of future practice. It would be unwarrantable to administer it in the form of a rule for the first time, announced by applying it retrospectively.

Another objection, of a less technical character, taken to the depositions of both Bangs and Clark, is, that they were interested witnesses. The ground of the objection, as suggested in the argument for the defendant, is, that they, being charged with the care and custody of the hay for safe keeping in the freight-house, are liable for the wrongful delivery, or liable over to the company for negligence, if the company are responsible for the wrongful delivery. That the company are responsible to the plaintiff for such wrongful delivery by their servants, is unquestionable. But aside from the liability of Bangs, arising from his unlawful intermeddling with the hay by delivering it to the defendant, they are not responsible in any form to the plaintiff. There was no privity between them and him in respect to it ; no express or implied agreement, and no relation like that of bailor and bailee out of which grew a duty owing from them to him. The act of Bangs, in conjunction with the defendant, in taking the hay from the freight-house and sending it to Boston, constituted them joint tort-feasors as to the plaintiff, and he might have pursued his remedy against them jointly, or against either or both severally. In a suit against either, the other is a competent witness for either party ; the judgment to be recovered neither discharging such other from liability, nor contributing to subject him to liability. Clark had no agency in the wrongful delivery, and had not, therefore, like Bangs, made himself liable for any positive acts of unlawful intermeddling with it. If either is liable at all beyond the liability of Bangs, for the wrongful delivery, and thus converting the property, it must be only to the company for their negligence, resulting in a loss to the company, for which they may be answerable over. But it is clear that the judgment in this suit could not be used in their favor, if for the plaintiff, nor against them, if for the defendant, in any suits which might be brought against them by the company. Nor does a recovery by the plaintiff relieve them from any existing liability, nor a recovery by the defendant fix upon them any liability to which they would not otherwise be subjected.

The depositions of Bangs and Clark were, therefore, properly admitted.

The objection to the form of the question proposed to G. Nute, as being leading, was not well taken. A question in the form, "whether or not," may, nevertheless, in some cases be objectionable as leading. The nature of the question and its subject matter may be such, that, framed in a particular way, it will suggest to the mind of the witness the answer desired, as well if commenced in the alternative form, "whether or not," as without it. The question objected to, however, does not so clearly and distinctly suggest the answer desired as to render it liable to the objection. It would be difficult, perhaps, to propose the question in terms better adapted to avoid leading the mind of the witness to the answer, without making it so general as to fail to direct his attention to the particular matter in relation to which his information was sought.

It was within the discretion of the court to submit to the jury the question upon the evidence presented, whether the statement of the defendant, testified to by G. Nute, was an admission of a fact, and thus competent, or a mere offer or proposition for a settlement, and therefore incompetent to be submitted to the jury as substantial evidence in the case. There is no distinction in this respect between this question and the preliminary one which arises upon the objection that the witness is interested. Either may depend upon a state of facts in relation to which the evidence may be conflicting and the result doubtful. In all such cases the preliminary question may well be submitted to the jury, as the proper tribunal to weigh conflicting evidence upon questions of fact. The instructions given to the jury upon this point were correct ; *Downer* v. *Button*, 6 Foster 344 ; and it is to be presumed those instructions were followed.

It is true, it may be impossible to ascertain whether the jury did or not, in passing upon the preliminary question, apply the principles contained in the instructions ; but this is equally true in every instance of a mixed question of law and fact, submitted to the jury with proper instructions as to what the law upon the question is. In the case of a question of interest, depending upon doubtful facts, it can no more be known whether they ap-

plied the law correctly than in this. Whether a witness is interested upon this or that given state of facts, is a question of law for the court. Whether the facts exist as claimed by one party or the other, is a question of fact, which, when presented in the form of the preliminary inquiry, as to the competency of the witness, may be determined by the court, or, in the exercise of their discretion, by the jury ; and the question of law is as fully settled by the court in giving the proper instructions to the jury, as to the principles of law by which they are to be governed in the event of their finding the facts this way or that, as it would be if the court should undertake to settle the entire preliminary question without the intervention of the jury.

In this case the question whether the evidence was admissible was not submitted to the jury ; the court in their instructions having anticipated that question by informing them that it was not admissible if, in fact, they should find upon the evidence that the statement was merely an offer or proposition for a compromise, and that it was admissible if it amounted to an acknowledgment of an existing fact. Whether it did or not amount to this, was the only question submitted to the jury ; and this was one of fact proper for them to determine, if the court, in the exercise of their discretion, thought fit to refer it to them.

The exceptions taken to the testimony of E. Nute were also properly overruled. The statement by the plaintiff of the reason why he refused to receive of the witness the money for the ten bales of hay, was a part of the *res gestæ ;* a declaration made at the time of an act done, going to qualify and explain the act, and coming within the principle recognized by the cases in our own Reports upon that subject. *Sessions* v. *Little,* 9 N. H. 271 ; *Hadley* v. *Carter,* 8 N. H. 40 ; *Hersom* v. *Henderson,* 3 Foster 505. If the fact that the money was offered to him, was at all material for the defendant to show, then it was competent for the plaintiff to prove all that was said and done at the time, in connection, giving a character to it. His declarations would not, of course, be evidence of the fact that the hay was not his, and it is to be supposed that proper instructions were given to the jury upon that point.

It is a familiar principle that if the memory of a witness is at fault in relation to matters of which he made a written memorandum at the time of the transaction, which memorandum he knows to be correct, he may refresh his recollection by recurring to the memorandum, and then testify to the facts there stated, as existing in his recollection; and this, too, whether the recurrence to the writing actually revives the recollection of the facts or not. Nor is it necessary that the writing should be by the hand of the witness, if it existed at the time of the transaction, and can be clearly identified by him, as a paper which he then examined, while the facts were fresh in his recollection, and which he then knew contained a correct statement of the particulars mentioned in it. *Jacob* v. *Lindsay*, 1 East 460 ; *Burrough* v. *Martin*, 2 Camp. 112 ; *Burton* v. *Plummer*, 2 Ad. & Ec. 343 ; 1 Greenl. Ev., sec. 437, note 2.

In *Haven* v. *Wendell*, 11 N. H. 112, it was held that a memorandum, made by the witness at the time of the transaction, for the purpose of preserving the memory of it, which failed to revive the recollection of the facts in his mind, might go to the jury as evidence, in connection with his statement that he had no doubt the paper stated the facts truly, and he should have sworn to them, as there stated, at any time afterwards so long as they were retained in his recollection. The same doctrine is asserted in *Watson & a.* v. *Walker & a.*, 3 Foster 471. Such is the rule also in New-York. *Clark* v. *Voice*, 15 Wend. 193 ; *Merrill* v. *Railroad*, 16 Wend. 586. The American cases go beyond the English in making the paper evidence to the jury. In this case the only use made of the papers was to permit the witness to consult them for the purpose of aiding his memory. His testimony was, that at the times of receiving the hay he made examination of the quantities, compared them with the amounts stated in the bills, and then knew that the bills were correct, in reference to the amounts, and their dates, and that he could identify the bills by memoranda then made by him upon them. The case, then, was clearly within the recognized rule, and the witness was properly permitted thus to refresh his recollection.

The case does not find that the court refused to permit them to go to the jury upon the motion of either party. No question, therefore, arises upon that point.

The fact that Bangs pointed out to the defendant the ten bales as his Chesley hay, was an immaterial one. It could furnish no justification to the defendant for taking the plaintiff's hay, that his co-trespasser misled him. He was bound to know that he was taking other hay than his own, although informed to the contrary by the person who, as servant of the company, had the charge of his hay, and who, therefore, in reference to *that* hay, was as much the agent and servant of the defendant himself, as he was of the plaintiff in reference to *his* hay.

So, too, as to the statement made by Bangs to Clark on the day following that on which the hay in question was taken ; if the fact that it was thus pointed out by Bangs was immaterial, the subsequent statement of Bangs, that he had so pointed it out, was also immaterial. This was also objectionable, as hearsay, and inadmissible on that ground. It does not appear from the case that it was offered to contradict either Bangs or Clark. On the contrary, it must be understood from the case that it was offered as direct evidence in support of a substantive part of the defence. If objection was taken to it as inadmissible, and it was not in fact of a character proper to be received, as direct and substantive evidence for the defence — no suggestion being made to the court that it was offered for the purpose of contradicting a witness who had testified — it cannot be supposed that their attention was turned to the inquiry whether it was or not of a character to contradict him ; and without such suggestion it was properly rejected.

The evidence offered by the defendant of the quality of the hay cut on the Durham town farm in 1851, and taken to the railroad in the winter following, was too general and vague to prove the quality of the hay in question. It might all be true in reference to that hay generally, and still have no application to this particular portion of it. The jury could only conjecture that possibly it might have such application.

The instructions requested of the court were properly refused. The taking of the hay by the defendant, and sending it to Boston as his own, was a conversion, it not being delivered to him by one having authority so to deliver it. The delivery by the company, or their servants, to the wrong person, is a conversion by them. 2 Greenl. Ev., sec. 642, and the authorities there cited. Where the goods come lawfully into the defendant's hands, as by finding, or upon a bailment, or delivery by the owner, a demand is necessary ; but where the taking is tortious, it is unnecessary.

In *Hyde* v. *Noble & a.*, 13 N. H. 494, *Parker*, C. J., says : " The purchase by the defendants of the chattels in question, taking possession as they appear to have done, and holding them as their own property, was a conversion. They received the possession from one who had no authority to deliver it to them, under a sale which purported to vest the property in them, and they by the purchase undertook to control the chattels as their own property. This was an assumption of power over them inconsistent with the rights of the plaintiff. Purchasing the property from one who had no right to sell, and holding it to their own use, is a direct act of conversion, without a demand and refusal. Their possession was unlawful in its inception, by reason of the want of authority in their vendor to make the transfer."

Here was an assumption of ownership over the property, equally inconsistent with the rights of the plaintiff, unauthorized by him, or by any person having authority thus to intermeddle with it. It is entirely immaterial that the unlawful taking was through mistake. *Sinclair* v. *Tarbox*, 2 N. H. 135 ; *Sargeant* v. *Gile*, 8 N. H. 325 ; *Flanders* v. *Colby*, 8 Foster 34.

If the plaintiff, knowing the fact that Nute had sold the ten bales substituted by the defendant in place of those of the plaintiff, taken by him, had received pay for those specific bales as sold by Nute on his account, understanding that he was thus receiving the pay for those identical bales, this would undoubtedly have constituted a ratification by the plaintiff of the

exchange. But its force, as proving such ratification, would depend entirely upon the knowledge of the plaintiff that he was receiving pay for the identical bales so substituted. If ignorant of the exchange, or if, knowing it, he nevertheless erroneously supposed that the ten bales of poor hay, for which he refused to receive pay, were the same bales which the defendant substituted for his, and, under that erroneous belief, in fact received pay for those which were so substituted, still such receipt would not have the slightest tendency to prove that he assented to the exchange. It might, then, be true that the ten bales of inferior hay, received by Nute, were not the defendant's hay, and that the plaintiff had in fact received the money which arose from the sale of the bales substituted by the defendant, without his doing any thing indicative of an assent to the exchange. Whether he honestly understood the ten bales of inferior quality, sold by Nute, to be the identical bales substituted by the defendant, and was therefore sincere in the reason assigned by him for refusing to receive the money which arose from their sale; or whether he understood that the ten bales substituted by the defendant were in fact included in those for which Nute accounted to him, and thus dishonestly attempted to pass off his own ten bales of poor hay for the defendant's ten of a better quality, were material questions of fact, bearing upon the plaintiff's knowledge of the identity of the bales, and they were open to the defendant upon the trial. Whether they were or not raised by him before the jury, the court could not properly have given the instructions solicited on this point, upon the evidence in the case. They would have proceeded upon the ground that it was enough, in order to show a ratification of the exchange by the plaintiff, that he received pay for those which the defendant substituted, although there was evidence tending to show that, if he did so, it was done ignorantly, and with the understanding on his part that he was not receiving pay for them. The instructions solicited were that the action was not maintained, unless the plaintiff show that the ten bales of inferior quality, sold by Nute, were in fact the defendant's bales, substituted by him; whereas the

action on its true grounds is maintainable as to this point, even if the inferior bales sold by Nute were not the defendant's, provided only the plaintiff in his settlement with Nute acted on the honest supposition that they were his, of which there was evidence competent to be submitted to the jury.

The instructions given were correct, and were such as the circumstances of the case required.

The exceptions upon all the points in the case must be overruled, and

*Judgment rendered on the verdict.*