# Transcript Appeals.

---

GEORGE H. McINTYRE, Administrator, &c., *v.* THE NEW YORK CENTRAL RAILROAD CO.

*. Injuries causing death—Measure of damages—Notes of Testimony—Evidence.*

It is not negligence for a passenger in a car, when there are no seats unoccupied, to attempt to pass to another car for a seat, in obedience to the direction of Defendant's employé.

The question of contributing negligence is one of fact, and belongs to the jury.

In an action for producing death by negligence, &c., the jury must be satisfied that pecuniary injuries have resulted; and if so satisfied, they are at liberty to allow them from whatever source they actually proceeded, and which could produce them.

The Plaintiff brought this action, under the statute, as administrator of Mrs. Susannah Knight, deceased, in behalf of her next of kin, to recover damages for her death, alleged to have been caused by the negligence of the employés of the Defendant, in November, 1859. It was proved on behalf of the Plaintiff, upon the trial, that Mrs. Knight, in company with her father, an old man, took the cars of the Defendant at Schenectady, and proceeded to Syracuse, occupying the rear car of the train. At Syracuse the car in which they were seated was detached from the train, and they were directed to go forward into the next car. The testimony on the part of the Plaintiff was to the effect that they had barely time to reach the next car when the train was started.

There were no seats in the car which they entered; and they

were directed by a man carrying a lantern, and appearing to be one of the employés of the road, to go forward—that there were seats forward. In compliance with this direction, Mrs. Knight and her father attempted to reach the next forward car, the train being at that time in rapid motion ; but in passing from the one platform to the other, she fell between the cars, and was instantly killed. It was a dark and somewhat stormy night—a rain or sleet falling and freezing. It was further proved, on behalf of the Plaintiff, that the deceased was under fifty years of age at the time of her death, in vigorous health, and accustomed to earn about a dollar per day by her labor as a seamstress. She left three children—two sons and one daughter ; all of them were over twenty-one years of age, and living away from their mother. It was shown that she was in the habit of making articles of clothing, and sending them to her children from time to time.

On behalf of the Defendant, the conductor and brakeman on the train in question testified that the deceased carried a bandbox, bundle, basket, and flower-pot, and that her father had a carpet-bag ; and also that the direction to the passengers to pass into the forward car was made as soon as the train reached Syracuse, where a stoppage was made of some ten or twelve minutes.

The jury found a verdict for the Plaintiff for $3,500, and the Special Term denied the motion of the Defendant for a new trial.

The General Term, on appeal, directed a new trial, unless the Plaintiff would stipulate to accept a reduction of the verdict.

This the Plaintiff consented to do ; and from the judgment entered accordingly for $2,387.57, the Defendant appeals to this Court.

*O. S. H. Hovey* for Plaintiff.
*Edward Harris* for Defendant.

Fullerton, J.—It cannot be considered negligence on the part of the person killed that she attempted to pass from one car to another, in obedience to the orders of the Defendant. She was not only directed to go forward into another car in the night-

time during a storm, and when the train was in motion, but it was necessary for her comfort and convenience that she should do so.

The car to which she was directed to go, when the train stopped at Syracuse, was filled with passengers; and the alternative was presented to her of incurring the risk of the transit, or of remaining standing with an aged companion, whose strength, it may well be concluded, was unequal to such a position. She had a right to a seat, and it was the duty of the Defendant to provide her with one.

If, in discharging that duty, they required her to perform an act which was perilous in itself, and in doing which she lost her life, the negligence, if any, which that act involved should be imputed to the company alone.

The rule that contributory negligence will prevent a recovery by the party suffering the injury ought not to be applied to such a case.

It would seem to be manifestly unjust to characterize as negligence the act of yielding obedience, under such circumstances, to the requirements of the party inflicting the injury, and to hold as between the parties themselves that it should deprive the party injured of all legal redress.

It would be a novel as well as a dangerous rule to hold that a railroad company should enjoy immunity from liability, when the act which occasioned the injury was undertaken under its direction, and was one which the passenger must perform in order to procure the seat which the company was bound to furnish.

I admit that passing from one car to another in a dark and stormy night, when the train was in motion, encumbered with baggage, and having charge of an aged person, was an act fraught with imminent peril, and, if done without sufficient reason, one involving great negligence. But having been undertaken at the request of the company, it is to be regarded as their act, and attempted at their risk.

Unless this view of the case is adopted, railroad companies may be guilty of the grossest wrongs without incurring liability. In performing their contract, they may require a feeble and inexpe-

rienced person to incur fearful risks, and then claim to be without fault in law, on the ground that the passenger who may have suffered an injury was negligent in following their reckless directions. The very statement of such a case suggests the necessity of so administering the law as to obviate so great an evil.

There was no error, therefore, in the rulings of the Judge who presided at the Circuit, touching the negligence of the deceased.

There was some slight evidence that the next of kin of the deceased sustained some pecuniary loss by her death. She was, at the time of her death, about fifty years of age, industrious in her habits, and in the enjoyment of robust health. It also appeared that she left three children living, who were supporting themselves away from home. She was in constant communication with them, and was in the habit of making and sending to them some articles of clothing. It cannot, therefore, be said that her children had no pecuniary interest in her life, even if that term is used in its most limited signification. The extent of that interest was a question for the jury, and was fairly submitted to them on the evidence.

When we consider the defect which the statute was designed to remedy, it is taking too narrow a view of the matter to say that the word *pecuniary* was used in so limited a sense as to embrace only the loss of money.

Such a limitation would be, in many cases under the statute, a mere mockery, because it would afford no substantial relief in the very cases in which it is most needed.

The loss of the society of a deceased relative, the injury to the affections of those surviving, cannot be regarded as being within the remedy of the statute, because in no sense can the loss be regarded as pecuniary. But to children the loss of a parent involves the loss of many other things which this Court has heretofore regarded as of a pecuniary character, and as the subjects of consideration by a jury in assessing the damages under the statute (Tilley *v.* Hudson River R.R. Co., 24 N. Y. 471).

It is true that these children were away from home, probably were of full age, and not immediately dependent upon their

mother for support.   But the evidence also shows that they were not beyond the reach of a mother's care and bounty.   Out of her earnings, insignificant as they were proved to be, she provided small articles of clothing for them, and the jury had a right to find that her death involved them in a pecuniary loss.

The statute under consideration has presented some difficult questions of construction; but the courts have taken a humane view of them, and have endeavored to effectuate what may fairly be presumed to have been the intention of the legislature in providing a remedy unknown to the common law.   It would not, therefore, have been proper for the Judge to have instructed the jury, as he was requested to do, that the Plaintiff was entitled to recover only nominal damages.

There is no precise rule which a jury can adopt in estimating such damages.

The question should always be left, as it was in this case, to their judgment upon the whole case; and when the question has been fairly submitted, and the damages are not excessive, their verdict should not be disturbed.

It follows, from these views, that the exceptions to the Judge's charge were not well taken, and the judgment should be affirmed.

DAVIES, Ch.J.—Upon the trial of this action the following facts appeared: On the 14th day of November, 1859, Mrs. Knight, the Plaintiff's intestate, started from Rutland, Vermont, in company with her father, to proceed west into the State of Pennsylvania.

They took the Defendant's cars at Schenectady, and proceeded thereon to Syracuse.

On arriving at that place they were seated in the rear car of the train, which the employés of the Defendant there determined to detach from the train and leave at that place.

That it was so to be left was announced by the brakeman to the passengers in that car, and they were requested by him to leave it and go into the forward cars.

The passengers immediately left that car and went into the one next forward of it.

The train started about the time the passengers got into this car; and there being no seats in it unoccupied, the passengers were compelled to stand, and were standing in the aisle of the car. At this time, and after the train had started, an employé of the Defendant came into the car with a lantern in his hand, and said : " Go forward ; there are plenty of seats forward ; go forward, if you want seats."

Some of the passengers then went forward while the cars were in motion, and among them was the deceased.

Mrs. Knight, in stepping from one car to another, either did not step far enough, or her feet slipped, and she fell between the cars and was killed.

It was a dark night, and it did not appear that any of the employés of the company were aiding or assisting the passengers in their passage from one car to the other.

Testimony was given of the age and circumstances of the deceased.

She was between forty-five and fifty years of age, and lived with a married daughter who had a family of children. She also left two sons, who were of full age.

The jury gave a verdict for the Plaintiff, finding the damages at $3,500 ; and on appeal to the General Term, that Court ordered a new trial, unless the Plaintiff would remit $2,000 of the verdict, and leave it to stand for the sum of $1,500, which the Plaintiff did, and judgment was entered for the latter sum, with interest ; and from which judgment, as so modified and entered, the Defendant appeals to this Court.

It is now urged by the counsel for the Appellant that there was evidence that the negligence of the deceased contributed to the injury, and that consequently there can be no recovery ; and he insists that that was a question for the Court to decide, and that it was error to leave to the jury the question of the Plaintiff's negligence or contributory negligence.

There was much evidence tending to show that, in moving from the one car to the other, the deceased was but obeying the directions of the employés of the Defendant ; and it was eminently proper

for the Judge to leave to the jury the question whether, under the circumstances disclosed, the deceased was guilty of any negligence in complying or attempting to comply with those directions. The learned Judge properly told the jury that they could judge whether it was safe for a woman to travel with her encumbrances on such a night as that is represented to have been ; that they could judge, too, whether it was right and proper for her, in order to get a seat, to undertake to pass from one car to another ; and that they could judge whether it was reasonable and proper for her to rely upon the directions of a man appearing to be in his place as an employé of the company. And he further instructed the jury that, if it was negligent for Mrs. Knight to follow the directions of this man with the lantern, it must have been such negligence as contributed to her death. The jury by this verdict have announced that it was not negligent for the deceased, under the circumstances, to follow the directions of the man giving the same.

The Court could not say, as matter of law, that it was negligence on the part of the deceased to follow that direction ; and whether there was negligence or not, was therefore properly left to the jury ; and they have responded that there was no negligence on the part of the deceased, and that settles this question.

I am unable to discover any error in the charge of the Judge in reference to the damages which the Plaintiff was entitled to recover. At the request of the Defendant's counsel, the Judge charged the jury that the burden of proof was upon the Plaintiff to prove the pecuniary injury, and such facts as could enable the jury to determine what would be a fair and just compensation, with reference thereto, to the next of kin, to entitle the Plaintiff to recover more than nominal damages. And also that the jury had no arbitrary direction in regard to the amount of damages, but must be governed by the weight of evidence as to what would be a fair and just compensation, with reference to the pecuniary injuries sustained by the next of kin.

These directions were in strict accordance with the doctrine as

laid down by this Court in the case of Tilley v. Hudson River Railroad Co. (24 N. Y. 471, and S. C. 29 N. Y. 252).

That portion of the Judge's charge on this subject, to which exception was taken by the Defendant's counsel, was also in harmony with the opinion of the Court in the case last cited, and is but a reiteration of the doctrine there enunciated.

He there said : " The jury are to give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death. They are not tied down to any precise rule. Within the limit of the statute as to amount, and the species of injury sustained, the matter is to be submitted to their sound judgment and sense of justice. They must be satisfied that pecuniary injuries resulted. If so satisfied, they are at liberty to allow them from whatever source they actually proceeded which could produce them. If they are satisfied, from the history of the family or the intrinsic probabilities of the case, that they were sustained by the loss of bodily care or intellectual culture, or moral training, which the mother [in that case] had before supplied, they are at liberty to allow it. The statute has set no bounds to the sources of these pecuniary injuries."

The charge of the Judge to the jury, in the present case, is unobjectionable in the light of this authority.

Upon the trial a witness was asked: " At the time of the death of the deceased, what was she capable of earning ? " This was objected to by the Defendant's counsel on the ground that it was not competent on the question of the worth of this woman's life to the next of kin.

The Court overruled the objection, and the Defendant's counsel excepted.

It does not appear that the question was answered. The witness was then asked : " And what did she usually earn ? "

This was also objected to on the same ground ; and the objection was overruled, and an exception taken. The witness answered : " Her services commanded readily, at that time, at least one dollar per day in addition to her board." It is now urged

that both of these questions were improper, as calling for the opinion of the witness.

It is a sufficient answer to say that no such objection was taken upon the trial. And if taken as applicable to the first question put, it is now wholly immaterial, as that question was not answered. And such an objection could have no pertinency in reference to the second question.

This question does not call for any opinion, but for a fact—
" What did she usually earn ? "

This was a material and important inquiry, in forming an estimate of the pecuniary loss sustained by the next of kin, by the occasion of the death of the deceased.

Upon the authority of the case of Clark *v.* Vorce (15 Wend. 193), the Judge committed no error in allowing the notes of the testimony of the witness Seeley (who had in the meantime died), taken by Mumford upon the former trial, to be read in this trial.

. In that case the witness testified that, on the former trial, he acted as counsel for the Defendant, and took very full and particular minutes of one Haight's testimony; that he intended at the time to take down the words of Haight, but could not pretend to give his precise words ; that he could not swear to Haight's testimony, except from the minutes taken by him on that trial, and could not now testify that he had taken down every word of his testimony ; but he intended, at the time, to take down all he regarded as material.

The Supreme Court thought the testimony should have been received. Ch.J. Savage observed : " There are few or no cases where a cautious and prudent man will swear that his notes of testimony of a witness, taken down at the time, contain his very words, and all his words."

In Huff *v.* Bennett (2 Seld. 337), the learned Judge who presided at the trial of this action, and admitted the notes of Seeley's testimony, in delivering the opinion of the Court, said : " The case of Clark *v.* Vorce (supra) was very different from this case. The witness says he cannot swear that his minutes contained the

testimony of Scott accurately, and that he may have omitted things that he testified to. He does not say he believes his minutes are correct, nor that he intended to take down the words of the witness."

In the present case, the Plaintiff called one of the counsel of the Defendant to prove the testimony given by the witness Seeley on a former trial of this action, he having since that trial died. He testified that he was one of the counsel for Defendant in this action; was present at the former trial, and took notes of testimony; he had them there in Court. He says: "So far as I took minutes, I took them as given by the witness, so far as I could; I designed to take the substance of the testimony as given by the witness, and presume from that I have; I have no recollection of the testimony aside from what I have here."

On his cross-examination he said: "Should judge that it was not possible for me to take the whole testimony verbatim; did not aim to take more than the substance; do not say that I have the whole language of the witness, nor the whole of his testimony." In response to the Court, the witness said: "I have no recollection of the witness or of the testimony; not the slightest whatever; I have his testimony on my minutes, and presume it is the substance of his testimony."

The Plaintiff's counsel then offered to read the evidence of Austin H. Seeley as given upon the former trial, as shown by the notes of testimony taken by the witness. The Defendant's counsel objected, on the ground that it did not appear that the whole of the testimony was taken, or that the testimony as given was taken down, and that the necessary preliminary proof of the accuracy of the notes had not been made.

The Court overruled the objection, and admitted the evidence, to which the Defendant's counsel duly excepted.

When it is observed that the witness called upon to prove the accuracy of his notes was manifestly an unwilling witness, it cannot fail to be seen that his whole testimony, when taken together, comes fully up to the doctrine of Clark *v.* Vorce (supra).

There was no error, therefore, in the admission of the notes taken by Mumford of Seeley's testimony.

It follows that the judgment must be affirmed.

All concur.

Affirmed.

JOEL TIFFANY,

State Reporter.
