# Orphans' Court of Philadelphia.

---

### ESTATE OF JOHN GAMBLE, DECEASED.

Married women—Separate use—Trust.

The gift of an estate for the separate use of a married woman implies, ex vi termini, a trust, and it is immaterial that no trustee is appointed or that no active duties are imposed.

Sur exceptions to adjudication.

Opinion by PENROSE, J. December 28, 1878.

The gift of an estate for the separate use of a married woman implies, ex vi termini, a trust, and it is immaterial that no trustee is appointed or that no active duties are imposed.

Experience has shown that while the Act of 1848 seeks to secure to the wife all rights of property "as fully after marriage as before," complete protection is found only in a trust for her separate use. And it has become a maxim of Pennsylvania law "that the highest protection of the wife is her own disability, in her want of power to yield to her husband's solicitations, or give way to her sympathies."

We have no right, therefore, in the present case, to say that the testator did not intend the consequences of such a provision, when, in apt technical language, he directs that the legacies of $2,000 to each of his daughters "shall be for their sole and separate use, * * * and not in any way or manner whatever be liable to the contracts, debts or engagements, or subject to the control or interference of their present or any future husbands."

It is true that there is some difference in the form of the trust for the legacies, and that provided with regard to the shares of the daughters in the residuary estate, which are given for their separate use for life only, with remainder to children, &c., if any, and, in default, over. But this furnishes no argument against the trust for the legacies. In the case of the residuary estate there is an

additional object, viz., the preservation of the contingent remainders, and this is the only difference. The trust as to it would therefore continue, although the daughters became discovert; while as to the pecuniary legacies, as the entire interest is given, it would cease with the coverture.

It was conceded at the argument, and the statement of facts in the adjudication is to be regarded as amended accordingly, that Mrs Brown was unmarried at the time of her father's death. So far as she is concerned, therefore, the trust for her separate use was inoperative. She was nothwithstanding her subsequent marriage to Mr. Parker, entitled to her legacy absolutely, and to this extent the exception on the part of the accountants is dismissed.

But the husband of Mrs. Justice, the other daughter, is still living, and the trust continues. As a necessary consequence the possession of the fund must be withheld from her.

The doctrine of the English courts, which treats a married woman as a feme sole in respect of her separate property, though followed in some of the States, has been repudiated in Pennsylvania, where, by an unbroken current of authority, beginning with Lancaster v. Dolan, 1 Rawle, 231, it has been established that she has no power except such as the instrument creating the trust expressly confers, and no right of disposition beyond it.

In Lancaster v. Dolan the opinion of Chancellor Kent, in Methodist Church v. Jacques, 3 Johns. Ch. 108, though overruled by the Court of Appeals in 17 Johns, 548, was adopted by Chief Justice Gibson, and though the question there presented was with reference to powers over real estate, the reasoning is equally applicable to personalty. The precise point was accordingly decided in Pennsylvania Company v. Foster, 11 Casey, 134, and, irrespective of that case, such would be the necessary result of the maxim already alluded to.

A contrary doctrine was held in Newlin v. Newlin, 1. S. & R., 275, and in Dallam v. Wampole, 1 Peters (Cir. Ct. Rep.), 116; but the latter case was submitted without

argument, and Newlin was, according to Judge Gibson, "hastily determined on an exception to evidence.

It is true that Mr. Binney never became reconciled to the doctrine of Lancaster v. Dolan, and that in his "Lead ing Members of the Old Philadelphia Bar" he takes occasion in commenting upon it, and upon what Judge Gibson says as to Newlin v. Newlin, ut supra, to draw an unfavorable comparison between him and his "great predecessor" (Judge Tilghman), by whom Newlin v. Newlin was decided. But some allowance must be mad e for the disappointments of counsel, and we must "take the law from what the judges have said it was."

The exception of the accountants is sustained, so far as it relates to the legacy to Mrs. Justice, and the adjudi⸗ cation will be modified accordingly.

With regard to the exceptions filed by Mrs. Justice, as the facts, which the auditing judge was under the im⸗ pression were admitted, appear to be in dispute, the ac⸗ count will, unless counsel can agree, be referred back, in order that the necessary evidence may be taken.—*Intelligencer.*

————o————

## LAW FOR TRAVELLERS.

[From the Chicago Legal Adviser.]

1. No one can recover for an injury of which his own negligence was the whole or in part the proximate cause. 22 Vt. 213; 11 East 60.

2. A person who rides on a railway engine, knowing it to be contrary to the rules of the company, and is injured thereby, cannot recover for such injuries. 22 Barb. 91.

3. Where passengers are carried and charged fare, in a caboose car, attached to a freight train, they have the same right to be carried safely as if going in regular passenger cars; and the same applies in case of a gravel train. 39 N. Y. St. 227; 7 Porter, (Ind.) 474.

4. And when the conductor, though against the rules,

allowed a passenger to travel in a freight car, charging him a first class fare, it was held that the company were liable for injuries the passenger received. Am. Law Reg. N. S. 615. (Modified somewhat in 26 Ill., 373.) And the same when the conductor of a coal train, invited a man to ride on his train, and charged him nothing. 1 Am. Law Reg. 111, Sup, Ct. N. Y.

5. Passengers have no right to pass from car to car, unless for some reasonable purpose. As to what is a reasonable purpose is for the jury to determine. 37 N. Y. 287; 15 Ill. 468.

6. Any one permitted to ride in a train as a passenger, although he has not paid his fare, is entitled to demand and expect the same immunity from peril as if he had paid his fare before injury. Holt, 13. And so if one is injured by the culpable negligence or want of skill of the company's servants, he is entitled to recover for injuries although he is in common speech a "dead head." 30 Ill. 9.

7. A newspaper reporter travelling on a free ticket, although borrowed of another, (12 C. B. 576; 5 Ind. 340); the president of one company riding by request of the president of another, (14 How. U. S. 483); a mail-clerk, travelling in charge of the mail-bags [16 Ad. and El. N. S. 984, 10 How, Pr, R. 97]; and a child for whom no fare has been paid, [L. R. 2 Q. B 442] ; were all held entitled to damages when injured. Nor does the fact that a train has been hired for an excursion excuse the negligence, or remove the liability of the company. 5 Ex. 787; 6 Ohio, N. S. 570; but see 20 Ill. 235.

On the subject of liability of common carriers and complete digest of authorities, see a very complete little work entitled "Wrongs and Rights of a Traveller, published by R. Carswell, Toronto, Canada, from which the foregoing is extracted.

Railway trains are liable to be detained by various causes, without any fault of the Company and negligence cannot be imputed to the company from the fact that a train may be behind the usual time.—State, use of Foy, v. Phia. Wilm. & Balt. R. R. Co. Sup. Ct., Maryland.