## CANOVAR *vs.* COOPER.

3b 115
42ap374

Although a father is entitled to the services of his child, during the minority of the latter, yet he may waive that right, by emancipating the child. Or the child may, by his father's consent, become entitled to receive the fruits of his labor, for his own use.

The intention of a father to emancipate his minor child is a question of fact ; and in the absence of direct proof, may be inferred from circumstances.

In determining that question, in a suit brought by a person to recover for work and labor done by him while a minor, the circumstances that he has been in the habit of working for others, and receiving pay for his labor, himself, and that another infant child of the same parent has done the same, without objection by the parent, may properly be taken into consideration.

Where a father was absent for several years, leaving his infant son to manage for himself ; the father contributing nothing to his education or support, and not in-

Canovar *v.* Cooper.

terfering in his engagements; *Held* that the emancipation of the infant might be presumed; and that he was entitled to recover, in his own name, for work and labor done by him during his minority.

Assumpsit. The action was brought to recover for work and labor done by the plaintiff for the defendant. Plea, general issue, payment and notice of set-off. The defence was that the services were performed when the plaintiff was a minor, and while his father was living; and that the compensation for the plaintiff's services belonged to his father, and not to him. The cause was referred to referees, for hearing and decision, who, after hearing the proofs and allegations of the parties, made their report, certifying that there was due from the defendant, to the plaintiff, the sum of $244. And the defendant, upon a case, now moved to set aside the report, and for a new trial.

*J. W. Tompkins,* for the defendant.

*W. W. Scrugham,* for the plaintiff.

*By the Court,* Strong, P. J.   The plaintiff worked for the defendant from March, 1837, to some time in the year 1841. The testimony does not give the exact dates; nor are they at all material to the questions discussed on the argument. It is clear that the plaintiff was a minor during the whole time, and that his father was then living. The father had some agency in the bargain for the son's services when he commenced working for the defendant, and in a settlement made for the work in 1838. The plaintiff, probably at the instigation of the father, then purposed to quit, and went some distance with his father, who was apparently about leaving the place, but returned immediately, and resumed his labor with the defendant. The father does not appear to have taken any part in the son's engagements, after this return, but apparently left him to manage for himself. It does not appear that he ever demanded any compensation for the plaintiff's services, after the brief interruption in 1838, nor that he subsequently, in any manner, contrib-

uted towards his education or support.    He was probably absent in Canada during the whole time, except a short period when he staid with Joseph Thwaites, a witness for the defendant. After he left the place the wages of another minor son were paid to such son, without objection on the part of the father. So also, the plaintiff, after leaving the defendant, received compensation from another man for work done during his minority. The material question is whether, under these circumstances, the plaintiff, or his father, is entitled to his wages?

Parents are under an obligation to support their children and are entitled to their services during their minority.    But, says Chief Justice Savage, in *McCoy* v. *Huffman,* (8 *Cowen's Rep.* 85,) " although the father is entitled to the services of his children till the age of twenty-one, yet he may waive that right. (*Burlingame* v. *Burlingame,* 7 *Cowen's Rep.* 92.)    He may emancipate his child, or the child may, by the father's consent, be entitled to his own services."    So also it was remarked by Sutherland, J. in *Shute* v. *Dorr,* (5 *Wend. Rep.* 206,) that " Such intention of the parent may be inferred from circumstances, and when the circumstances of any particular case warrant the conclusion that it was understood that the child might receive his earnings, payment to him will be good."    We subscribe fully to these sentiments, as being just and reasonable.    The reason why parents are entitled to the services of their minor children, usually given, is that which I have already mentioned—the liability to support them.    But in my opinion a much stronger reason, and one much more consonant with the feelings and obligations of parent and child, is, that it gives the parent the control over the actions of his children when they are incapable of judging for themselves, and thus has a tendency to save them from the effects of idleness or imprudence.    But when a parent, from confidence in his minor child, or, as is sometimes, although I hope not often, the case, from indifference as to his welfare, allows the child to manage for himself, and to obtain his support from his own industry, the reasons for the rule fail, and the rule falls with them.

The conclusion to which the referees in this cause came,

Canovar *v.* Cooper.

that the parent had in effect manumitted the plaintiff, was one of fact, and, in our opinion, was warranted by the evidence. If the parent was absent in Canada, or indeed any where, during the last three years, as there is reason to suppose that he was, without taking any agency in the affairs of the son, the rational inference is that the son was to receive the avails of his labor, for his support. He could not have even clothed himself unless he could obtain at least a portion of his wages.

The defendant objected that some of the evidence adduced by the plaintiff, to prove such absence, was hearsay only. Continued absence was not proved by hearsay. That was established by the direct evidence of persons residing in the place, and the absence of any direct evidence by the defendant, to the contrary. But an attempt was made to prove, by such evidence, the residence of the plaintiff's father in Canada. That was not at all material. So long as he was absent from the place, it matters not where he was. I am inclined to think, however, that the evidence was admissible. The question as to a man's place of residence is of a public nature, and when such residence is in a foreign country it is difficult to procure any direct testimony on the subject. Both are reasons for the admission of hearsay evidence. (1 *Stark. on Ev.* 54 *to* 60.) If, however, the father resided in the same place, and neither received nor claimed any wages for his son's services for so long a period, the inference would be strong that he intended that they should be paid to the son. If any demand had been made by the father it must of course have been known to the defendant, and might, and would have been proved by him.

The defendant's counsel insisted, on the argument, that the referees erred in permitting the question to be put to the witness John Cuthill, whether the plaintiff had not subsequently, and during his minority, himself made a contract to work with the witness? If the question had stood alone, it would have been inadmissible, but taken in connection with the facts that the plaintiff subsequently, while still a minor, worked for the witness a year and received pay for his services, the whole went to show that the son was working for himself, without objection

from the father, and was admissible evidence.    True, the facts showing that the question was proper had not been proved when it was put, but that was a mere inversion of the order of eliciting the evidence, which cannot be assigned for error.    In addition to this, Joseph Thwaites, one of the defendant's witnesses, testified that he had employed another minor son of the same parent, and had, after the father left the place, paid the son for his services.    This was not objected to by the defendant, and went to confirm the inference, arising from the father's conduct in other particulars, that when he went away he intended to emancipate his children and to permit them to receive the fruits of their own labor.

The motion to set aside the report of the referees is denied.

