## \*HAMMOND *v.* CORBETT AND TRUSTEE.

50  501
69  401

50  501
72  376

A widowed mother is entitled to the services and earnings of her minor child—if such child be unemancipated, and has no other guardian—in the same manner, and to the same extent, as the father, if alive, would be entitled to them.

The action was assumpsit, by Thomas Hammond against Mary C. Corbett and trustee, for the price of wood furnished her for her own use; and the verdict was for the plaintiff. The defendant is, and when this suit was brought was, a widow. A minor son of the defendant (about sixteen years of age) worked for the trustee, and there was found in his hands about sixty dollars, wages due for labor of said minor son. It did not appear that the minor son had ever chosen a guardian, or had any appointed by the probate court, or that he had ever been emancipated.

The question as to liability of the trustee was reserved.

*Dudley*, for the plaintiff.

I. The general right of the parent to the earnings of the minor

---

\* This case was decided at Manchester (adjourned term), August 17, 1872, and I have inserted it here, in advance of its proper place, because of its practical importance.                              REPORTER.

child must be admitted. 1 Bl. Com. 453; Co. Litt. 117, note 161; *Gale* v. *Parrott*, 1 N. H. 29.

II. The mother, after the death of the father, remains the head of the family. She has the like control over the minor children that he had while living. *Dedham* v. *Natick*, 16 Mass. 140; *Nightingale* v. *Withington*, 15 Mass. 272.

III. The father, and in case of his death the mother, is entitled to the earnings of their minor children. *Benson* v. *Remington*, 2 Mass. 113; 15 Mass., cited above; 15 N. H. 486, and cases there cited.

IV. It is not necessary that it should appear that the mother was supporting the minor child. The presumption, in the absence of proof, is, that such was the case.

*Fletcher & Heywood*, for the trustee.

The trustee cannot be held, unless the principal defendant could have sustained an action against the trustee, and have had the fruits of it as her own; and the agreed facts of the case will warrant no such conclusion. A father is under different obligations and has different rights from a mother. 15 Mass. 274; 3 N. H. 29, and authorities there cited; 15 N. H. 486. The case of *Pray* v. *Gorham*, 31 Me. 242, is a case directly in point. In that case, SHEPLEY, C. J., says: "A minor child may consent to become the servant of the mother; and she may make a contract with another person for his services, as she would for the services of any other person who had for the time being become her servant, and may in such case recover for those services. But if it be intended to declare that the mother, after the death of the father, is entitled to the earnings of the minor child, in the same manner as the father, while alive, was entitled to them, the position cannot be sustained." See, also, 4 Binney 487, and authorities there cited.

It does not appear, in this case, that the mother was supporting the child, or that the child was at work for the mother.

FOSTER, J. "The father," says Blackstone, " has the benefit of his children's labor while they live with him and are maintained by him; but this is no more than he is entitled to from his apprentices or servants." 1 Bl. Com. 453.

WOODS, J., in *Jenness* v. *Emerson*, 15 N. H. 488, says: "It may be safely stated, as a general rule, that *parents* are under obligation to support their minor children, and in some degree liable for their education and entitled to their earnings.   *   *   *   Whether the general rule will apply to the mother in all cases where the father has deceased, we need not settle in this case."

Mr. Chancellor KENT says: "In consequence of the obligation of the father to provide for the maintenance, and, in some qualified degree, for the education of his infant children, he is entitled to the custody of their persons, and the value of their labor and services." 2 Kent's Com. *193.

"By the common law, it is the duty of parents to support their

minor children. This duty is founded on the *law of nature.*" Reeve's Dom. Rel. 283. " Whoever had been the instrument of giving life to a being incapable of supporting itself, is bound by the law of morality to support such being during such incapacity." " When such incapacity ceases, the obligation is at an end." He then states that the usual limit of such incapacity is twenty-one years. *Ibid.*

In *Nightingale* v. *Withington,* 15 Mass. 272, it is said : " The father, and in case of his death the mother, is entitled to the earnings of their minor children." Remarking upon which expression, WOODS, J., in *Jenness* v. *Emerson, supra*, says : " The right must be founded upon the obligation of the parents to sustain and support their children, which obligation is compensated by a right to their services, or to the fruits of them, if by their permission they are employed by other persons. But when the father has discharged himself of the obligation to support the child, or has obliged the child to support himself, there is no principle but that of slavery which continues his right to receive the earnings of his child's labor."

In *Dedham* v. *Natick,* 16 Mass. 135, WILDE, J., remarks : " The mother, after the death of the father, remains the head of the family. She has the like control over the minor children as he had when living. She is bound to support them, if of sufficient ability."

In *Hillsborough* v. *Deering,* 4 N. H. 95, speaking of unemancipated minor children, RICHARDSON, C. J., says : " By the common law, and independent of the statute, such children are entitled and have a perfect right to support from their parents ; and correlative to this duty of maintaining their offspring is the right of parents to the services and earnings of their children, so long as the latter remain under their control." He speaks of parents, without distinction or preference ; but the case did not require any reference to the duties and rights of a mother.

In an earlier case (*Riley* v. *Jameson,* 3 N. H. 29), the same distinguished chief justice, in expressing the opinion of the court, had said : "A mother stands on different ground from the father in respect to her children ; " and saying this, he had but followed and indorsed the authority and the *dicta* of numerous cases and many text writers, in which and by whom the general proposition is stated, but without reference to any reason or argument in support of it.

But he goes on to say : " She is bound to support her children only when *she* is of sufficient ability, and *they* stand in need of relief." [A very wise and practical test, as far as the first branch of the proposition is applied.] " While a mother actually supports her minor children at her own expense, she is entitled to their services, and they may perhaps be presumed to be in her employment."

In *The People* v. *Mercein,* 3 Hill (N. Y.) 408, it is said : " The father is entitled to the benefit of his child's labor while it lives with him and is maintained by him ; while the mother, as such, is entitled to no power over it, but only to reverence and respect," which is but the language of Blackstone, in the concluding part of the passage already quoted from that author.

The court in that case went further than many tribunals have gone, in attempting to furnish a reason for the distinction between the rights of the father and mother in this respect, and it is placed distinctly upon the ground stated by Blackstone (1 Bl. Com. 468), that " the very being or legal existence of the woman is suspended during the marriage, or, at least, is incorporated and consolidated into that of the husband," a reason which, of course, cannot apply to the condition of widowhood.

In *Pray* v. *Gorham*, 31 Me. 240, it was said, by SHEPLEY, C. J. : "A minor child may consent to become the servant of the mother ; and she may make a contract with another person for his services, as she would for the services of any other person who had for the time being become her servant, and may in such case recover for those services (citing *Clapp* v. *Green*, 10 Met. 439). If it be intended to declare that the mother, after the death of the father, is entitled to the earnings of a minor child, *in the same manner as the father while alive was entitled to them*, the position cannot be sustained."

Thus, again, we have the broad assertion of a proposition, for the foundation of which no rule or reason is expressed. If the mother, after the father's death, is not entitled to the earnings of a minor child, " *in the same manner* as the father, while alive, was entitled to them," *why* is she not so entitled ? Is she entitled in *any* manner ? and if so, in what manner ? *Pray* v. *Gorham* was decided twenty years ago. A long series of prior conflicting decisions had been made, and the court could not have been unmindful of them.

It is unsatisfactory and discouraging to find a great practical question, of so much importance, disposed of in such an off-hand way ; and yet, because it asserts a certain condition of the law as unquestionably existing, for which no argument in reason, nor certain foundation in authority, is presented, to find, also, that the case has been, for twenty years, relied upon as sustaining the proposition that a widowed mother is *not exactly* entitled to her minor child's wages.

But in 1859 occurred the case of *Snediker* v. *Everingham*, in New Jersey, 3 Dutch. 143, which was an action in which the widowed mother of a minor child claimed the child's earnings; and the question was, whether, by the terms of a contract made by the mother, the child's wages were, or not, to be paid directly to the child. Three judges delivered opinions *seriatim*, all concurring with HAINES, J., in this : " That parents are bound to maintain their children, and are entitled to their services during minority, is a proposition too plain to be denied. The law considering the child as the servant of the parent, and as laboring for him, although in the actual employment of another, the wages earned belong to, and may be recovered by and in the name of, the parent."

So, also, in *Campbell* v. *Campbell*, 3 Stockt. Ch. 272, it is said : " In New Jersey, the mother, upon the death of the father, is entitled, *as the natural guardian*, to the earnings of her children during their minority," unless she emancipate them, or permit them to receive and invest their own earnings. I am unable to discover any statute of New

Jersey whereby the law in this respect is made peculiar to that locality.

*Commonwealth* v. *Murray*, 4 Binn. 487, was *habeas corpus*, in which the question before the court related to the widowed mother's right to the custody of her son, aged eighteen, who had enlisted in the United States navy without her consent. The constitutionality of the act of Congress under which the boy enlisted is considered and sustained; and it is held that the minor's contract of enlistment may be regarded as in fulfilment of " a right act" * * " a duty which he owes to his country," and so he may not avoid the contract.

The opinion of the court was delivered by YEATES, J., and the only remark pertinent to this inquiry is " merely this and nothing more ": " The father is entitled to the services of his sons while they live with him, but, however strange it may appear, the mother has no such right;" in support of which proposition he cites Wood's Inst. 64, 1 Bl. Com. 453, and 1 Wooddes. 451.

The substance of Judge Reeve's deductions is, that parents are bound, because they gave them being, to support their minor children; that the father must do this in any event, and has the absolute right to their earnings, while the widowed mother is only bound to support the minor when it is necessary she should,—that is, when the minor has not sufficient property, independent of his earnings, to support himself; but that whenever she is bound to support him, she has the same right as the father has to his earnings. Reeve's Dom. Rel. 283, 290, 291, 295, 319, 324, 343.

These references illustrate the confused exposition of the law in the respect of our present inquiry; and to proceed further in the same direction would probably be to find " confusion worse confounded."

It will probably be found, upon a critical examination, that in a majority of the cases the right of either parent to control the services and earnings of the minor child is placed upon the doctrine of compensation,—as, to some extent, an equivalent for the parent's obligation to support and maintain the child.

But we have recently reaffirmed the doctrine, in this State, that, except by the operation of the poor-laws, a parent is under no legal obligation to maintain his minor child. *Kelley* v. *Davis*, 49 N. H. 187. See, to the same effect, 1 Bl. Com. 449; *Mortimore* v. *Wright*, 6 M. & W. 488; *Bazeley* v. *Forder*, L. R., 3 Q. B. 565.

Our statute, providing for the reimbursement of towns for supplies furnished to paupers, imposes the duty of maintenance as well upon the mother as the father. Gen. Stats., ch. 74, § 8.

It follows, then, that in so far as the right to the child's services is to be regarded as compensation for the obligation of the parent to reimburse the town for supplies furnished the child, the father and the mother stand on precisely the same ground in this respect; while neither father nor mother is entitled to the services of the minor child, upon this principle of compensation, if they are themselves so poor as to be unable to support the child; since the statute imposes the obligation of support only upon " relations " of the poor person, " of sufficient abil-

ity;" and therefore, the poorer the parent, the less is he or she entitled to the child's wages.

Now all this is extremely unsatisfactory, for the reasons already suggested; but more particularly because, under the statute, children or grandchildren, and parents or grandparents, of sufficient ability, are liable to maintain the child or grandchild, in the one case, and the parent or grandparent in the other. And if the right to the services should. follow the liability under the pauper act,·the children would have a right to the services of the parents and grandparents; and the grandparents the right to the services of the grandchild, as well as the parents to the services of the children.

In short, this doctrine seems to be repugnant to the reason and the logic of the law; and if it has been assented to thus far, it should now be repudiated. We therefore lay the .pauper statute out of the way of this consideration.

Must we come back, then, to the " principle of slavery," as that upon which the parent is entitled to the child's wages? and if so, must we adopt the result of Mr. Ch. Justice RICHARDSON, in *Riley* v. *Jameson*, that " a mother stands on different ground from a father in respect to her children," and the proposition of Blackstone, that " a mother, as such, is entitled to no power, but only to reverence and respect?" or shall we adopt the contrary conclusion of·Mr. Justice WILDE, in *Dedham* v. *Natick*, that " the mother, after the death of the father, remains the head of the family. She has the like control over the minor children as he had while living?"

In pursuing these considerations, we are naturally led to inquire, What is the reason (nowhere expressed) *why* " the mother stands on different ground from a father, with respect to her children?" *why* is she " entitled to no power?" and why are these propositions made the foundation for the authorities that hold that she has no right, except as compensation for maintenance and support, to control the services and earnings of the child?

We suspect the distinction will be found to have no substantial foundation in reason, but that it is simply a result and reflection of and from the old feudal doctrine and principle which, requiring the abject subjection and servitude of the wife, was unable to recognize the supremacy of the mother. The mother (such is the feudal principle) has no power of control over the child, because the wife and mother is as much the slave of the husband as the child is. Or it may be that it has its foundation in still more remote ages, when woman was regarded as in all respects and by creative design an inferior being, very far from capable of having any power or right of authority,—naturally and necessarily subject to and the object of control:

It was upon this feudal system, which regarded not only the husband and wife as one, but " the husband as *that* one," denying to woman that place and those rights which she ought to have, that the common law is founded; and this old system has engrafted upon our jurisprudence many rules and forms for which, like the proposition we are now considering, no logical reason can be stated. See 1 Pars. Con. (5th ed.) 339.

Not until the polite reign of Charles the Second (1 Bl. Com. 445) did it begin to be doubted that a man might reduce his wife to sub-jection by means of corporal punishment; while the civil law permitted him, *flagellis et fustibus acriter verberare uxorem ;* but this " ancient privilege," as Blackstone terms it, has in later times been questioned even in England, is repudiated in Ireland and Scotland, has met with very little favor in this country, and has never been recognized in this State. *Poor* v. *Poor*, 8 N. H. 313. See Bishop M. and D., §§ 4, 85; Schouler's Dom. Rel. 59. And at length it has come to pass, that the gradual elevation of woman, in social, domestic, and practical business life, has swept away the principles and theories lying at the foundation of such distinctions as have been recognized in the respect of the pres-ent inquiries.

It has always been the glory and honor of our New England homes, that, with the death of the father, paternal authority is accorded to the widow. She becomes, in very truth, the head of the family ; and only that household is well regulated, prosperous, and happy, where the children cheerfully accord to the mother, not alone the affection and care which nature prompts, but the reverence, honor, and obedience which her station demands.

Such being the happier condition of the present age, and mindful of the successive steps of legislation in this State tending in the direc-tion of the equalization of the legal rights and the social position of the sexes, we are not inclined to recognize the " principle of slavery " as any longer controlling the doctrine of the right to the child's wages,—if, upon that principle, the widowed mother is to be excluded,—but, rather, to insist that, in so far as the right to the child's services de-pends upon authority and control of the person, there can be no distinc-tion between the case of the father and the widowed mother, the child having no other guardian.

*Cessante ratione legis, cessat ipsa lex;* and if in remote times there was a reason for making a distinction between the liability of the father and the widow, there would seem to be none now. Women, whether married or single, now own and control property, concerning which they make contracts, and may sue and be sued ; their rights are recog-nized and protected by the law; they do more business, and assume and have accorded to them more importance, than ever before. Their rights and responsibilities, their privileges and their liabilities, must be regarded and construed with reference to their changed condition.

But there is a broader ground than any yet stated, upon which, as we think, it may be safely asserted that, unless in exceptional cases, a widowed mother is entitled to control the services of her minor child. It is thus expressed by STRONG, P. J., in *Canover* v. *Cooper,* 3 Barb. 117 : " The reason why parents are entitled to the services of their minor children, usually given, is that which I have already mentioned —the liability to support them. But in my opinion, a much stronger reason, and one much more consonant with the feelings and obligations of parent and child, is, that it gives the parent the control over the actions of his children when they are incapable of judging for them-

selves, and thus has a tendency to save them from the effects of idleness or imprudence.   But when a parent, from confidence in his minor child, or, as is sometimes, although I hope not often, the case, from indifference as to his welfare, allows the child to manage for himself, and to obtain his support from his own industry, the reasons for the rule fail, and the rule falls with them."

Perhaps the principle upon which this rule is founded may be designated the right of guardianship, without the liability, incident to that relation, of accountability for the pecuniary trust.   See *Freto* v. *Brown*, 4 Mass. 675 ;  *Campbell* v. *Campbell*, before cited.

Mr. Bishop, 2 Mar. and Div., §§ 527, 528, like the other text-writers on the subject, is evidently embarrassed by the confusion incident to this branch of the law.   He tells us that " the father is, at common law, in some sense the guardian of his minor children, though in precisely what sense, the books seem not to be agreed ; and that when he dies the guardianship devolves, not to its full extent, on the mother, but partly so," &c ; and of the meaning of all this we have no explanation.

So, he says, " the father is under a strong moral obligation, which the law recognizes, to provide sustenance for his minor children, to whose earnings he is entitled while he maintains them, but no longer. * * * Likewise the mother, being a widow, is entitled to the labor of her children while she supports them ; " that the father may assign to another their services during minority, but it is doubtful whether the widowed mother " can assign their labor to another."   See, also, where the matter is left in the same condition of uncertainty, 1 Bishop's Married Women, § 474.

A guardian, says Mr. Schouler (Dom. Rel. 389), is " a person entrusted by law with the interests of another, whose youth, inexperience, mental weakness, and feebleness of will disqualify him from acting for himself in the ordinary affairs of life."

" Guardianship, by nature and nurture, denotes hardly more than the natural right of parents to the care and custody of their children." * * It " belongs exclusively to the parents,—first to the father, and, on his death, to the mother." * * * " The mother, if not superseded by the infant's election at fourteen, or by the appointment of a new guardian, has, in the absence of the father, the legitimate care of the child " until the age of twenty-one.   *Ibid* 391.

True, the authority of such guardians extends only to the child's person, and they have no right to intermeddle with his property.   1 Bl. Com. 461 ; but in almost universal practice, it seems to have been conceded, and we think it may be regarded as recognized therefore by law, that, as a compensation, not for the statutory *liability* of maintenance, but for the support, nurture, care, protection, and education *actually afforded and furnished* to the child, the parent has a right to control and appropriate its earnings during minority.

And in case of the father's death, the mother, in this sense, becomes truly the head of the family.   She extends her maternal guardianship, her care and protection, over the minor child, and controls those little

earnings which, if left to the child's disposition, might lead him into courses of wastefulness, dissipation, and ruin.

The law does not hold her to the accountability of a trustee, because it recognizes the fact that these earnings of the child can seldom be an equivalent compensation for the care and expense incurred in its support.

In *United States* v. *Bainbridge*, 1 Mason 78, 79, Judge STORY, speaking of the parental right of custody, says, "in whatever principle this right is founded, whether it result from the very nature of parental duties, or from that of authority which devolves upon him by reason of the guardianship by nature or nurture, technically speaking," its existence cannot be questioned. Apparently, he places the right of custody and of services on the same ground—whatever that may be.

So we, having failed to discover any sensible ground for a distinction between the rights of a father and those of a widowed mother, are inclined to hold that, in whatever principle this right is founded, whether it result from the very nature of maternal duties or from that of authority which, upon the husband's death, devolves upon her by reason of the guardianship for nurture, technically speaking, the mother is entitled to the child's services until her rights are superseded by the appointment of another guardian, or the arrival of the child at years of majority.

Judge REEVE says : " Mothers, during coverture, exercise authority over their children ; but, in a legal point of view, they are considered as agents for their husbands, having no legal authority of their own. After the death of the husband they often have authority. I deem it an immaterial inquiry whether they possess this authority in character of a parent, master, or guardian." Reeve's Dom. Rel. 295.

And again : " If the father die, the mother is guardian by nature to her minor children, both males and females. But the mother is not in the same situation as the father. She has no right to the personal services of her children, only when she maintains them. If they have property of their own they are to be maintained from that," pp. 319, 343.

But, in view of all the authority we have been able to discover, and upon the principles and reasons stated, we are not prepared thus to limit the authority of the widowed mother to control and appropriate the child's earnings. On the contrary, we are disposed to maintain that, between the situation of the father in the one case and the widowed mother in the other, there is no distinction in respect to the child's earnings.

The parent may allow the child to receive, and invest or control, his own wages ; and in such a case, of course, the parent cannot claim them. *Burlingame* v. *Burlingame*, 7 Cow. 92; *Shute* v. *Dorr*, 5 Wend. 204; *Chase* v. *Elkins*, 2 Vt. 290; *Tillotson* v. *McCrillis*, 11 Vt. 477; *Gale* v. *Parrot*, 1 N. H. 28; *State* v. *Barrett*, 45 N. H. 16; *Lamprey* v. *McIntyre*, Hillsborough, June, 1872; Schouler's Dom. Rel. 368.

In the present case, it does not appear that the child had ever chosen any guardian or had any appointed by the probate court, or that

he had ever been emancipated ; and unless it shall appear, upon further disclosure (which may be permitted in behalf of the child), that such was the case, or that in some other way recognized by law, and in accordance with the views expressed in this opinion, the mother is to be excluded from the control of her son's wages,

                              *The trustee must be held chargeable.*