FRANK L. PINEO, AS ADMINISTRATOR, ETC., OF NELLIE
    PINEO, DECEASED, RESPONDENT, v. THE NEW YORK
    CENTRAL AND HUDSON RIVER RAILROAD COM-
    PANY, APPELLANT.

*Action for damages for death caused by the defendant's negligence — when a verdict
    will not be set aside as excessive — vigilance required of a passenger at a railway
    station.*

In an action to recover damages for the negligent killing of the plaintiff's intestate,
    brought by her brother as her administrator, it appeared that she was a young
    girl of about fourteen years of age, bright, intelligent, healthy, active and self-
    reliant. The evidence tended to show that her mother was dead; that her
    father had abandoned his family some years before the accident; that he had
    not supported his daughter, nor did his family know whether he was dead or
    alive. On the trial it was assumed that the father was living, and the judge
    instructed the jury that the father was the next of kin of the deceased and they
    were to give him, by their verdict, a just and fair compensation for the pecuni-
    ary injury he had suffered by reason of the death of his daughter. The jury
    rendered a verdict of $3,500.

*Held,* that the court properly refused to set it aside as excessive. (BARKER, J.,
    dissenting.)

The precaution against being run over, which a passenger is bound to take while
    in a railroad station, considered.

APPEAL from a judgment, entered on a verdict rendered at the
Monroe Circuit, and from an order denying the defendant's motion
for a new trial made upon the minutes of the justice before whom
the action was tried.

The action was brought by the brother of the intestate, as her
administrator, to recover damages for her negligent killing by the
defendant. The mother of the intestate was dead and the father
had abandoned his family some years before the accident and had
not supported his daughter, nor did his family know whether he
was dead or alive.

On the trial the judge charged as follows: " The next of kin in
this case is the father. You are to give such damages as will be a
just and fair compensation for the pecuniary injury which he has
suffered." The jury rendered a verdict for $3,500.

*A. H. Harris,* for the appellant.

*Q. Van Voorhis,* for the respondent.

SMITH, P. J. :

The action was brought to recover damages for the death of Nellie Pineo, resulting 15th September, 1882, from injuries received by her two days previously in the defendant's passenger depot at Rochester.

The deceased was fourteen years and seven months old. She had been living with her sister near Penn Yan, and was on her way to Buffalo to live with a married sister residing there. She arrived at the Rochester depot about ten o'clock in the forenoon, over the Auburn branch of the defendant's road, and was notified by the conductor that she would have to take another train for Buffalo, which would shortly arrive from the east on the Syracuse branch. The depot was 319 feet long and 116 feet wide. Six tracks ran through it, east and west. They were arranged in three pairs; between the pairs was a space about twenty-three feet wide, and the tracks of each pair were about six feet apart. After a little time the expected train arrived, entering the depot on the fourth track from the south. The evidence on the part of the plaintiff tended to show that as the train entered the depot, running at the rate of about four miles an hour, an employe of the defendant told the deceased that was her train; that she was then standing in the space between tracks two and three; that on being so notified she went towards the train, carrying her satchel and parcel; crossed the third track, looking towards the advancing train, and stood in the space between the third and fourth tracks until the engine of the train passed by her. At that juncture a single engine and tender used as a pusher came backing from the west on the third track, and one of the railroad men, apparently supposing the deceased was in danger, rushed up and tried to get hold of her, and she was struck by the pusher, thrown down and shoved along the track, receiving the injuries of which she died. The person who thus interfered for the purpose of rescuing the deceased was a depot baggageman named Bolger, who was called as a witness for the defendant and testified, among other things, that he thought the deceased was intending to cross the track in front of the train, and that she was in danger from the train; that he ran and seized her in his arms without speaking to her or she to him; that she struggled excitedly and got out of his arms, and as she did so whirled around on to the third track and was

struck by the pusher. Bolger also was struck by the pusher and knocked down, but not seriously injured. He testified that if he had let the girl stand where she was, and she had not moved, she would not have been struck by the pusher, and that his motive was to get her out of the way of the train and not of the pusher. There was a conflict of testimony as to whether, when Bolger seized the deceased, she was standing in the space between tracks three and four or had crossed on to the fourth track. The conductor of the train in which the deceased came to Rochester was called as a witness for the defendant, and he testified that the deceased, on the train, asked him to direct her to the Buffalo train at Rochester and he promised to do so, and that when they reached the depot he pointed out to her the open space between tracks two and three and told her that her train would be in on the second track and that if she would stand there she " would be all right."

The judge submitted to the jury the questions of negligence and contributory negligence, and no question is made by the appellant's counsel as to the sufficiency of the evidence to carry each of those questions to the jury. It is contended that the judge erred in refusing to charge, as requested by the defendant's counsel, that if the deceased went between tracks three and four to wait for the stoppage of the train, and then to get aboard of it, she assumed the risk, so far as she might be in danger from the backing engine on track three; and also in refusing to charge that in going to that space the deceased was bound to look along track three, in both directions, before passing over that track, and if she failed to do so, and by reason of such failure the accident occurred, the plaintiff cannot recover. In declining the last request the judge said that the jury might take into consideration the fact that the deceased did not look, upon the question of contributory negligence. And upon that subject he had previously charged that " the deceased was not bound to look on both sides; she had the right to assume that some warning would be given of engines running through the station, still she had no right to shut her eyes. She must, as the saying is, keep her wits about her."

We think there was no error in these respects. The deceased was not required to exercise the same precautions as a traveler in the highway about to cross a railroad track. She was a passenger,

and was at the depot for the purpose of taking the train at the implied invitation of the defendant. She was notified by the defendant's employe that the train which had just come in was the one she was to take. She was obliged to cross track three to reach it, and she had a right to suppose, in the absence of notice to the contrary, that the way was safe. The backing of the engine upon that track without warning, when the passenger train was making its way in the depot, was an act of gross negligence on the part of the defendant which the deceased was not bound to anticipate. If the bell upon the engine was rung it was no notice to her unless she actually heard it; and that she did not hear it is inferable from the circumstances. Nor is the deceased to be held, as matter of law, to have taken the risk of the danger which she encountered by reason of the fact that she started to cross the track before the train had stopped. The train was running slowly. The information conveyed to her was that it was about to stop and that it was time for her to be in readiness to get on, and in the absence of notice to the contrary she had a right to assume that it was then proper and safe for her to be nearer the train with her luggage in a position to get on when it should stop. She was not bound to anticipate that in the moment that would elapse before the train would be brought to a stand still her way would be cut off by an engine backing down upon the intervening track without warning given to her. So that in going upon the track as she did she is not to be held to have taken the risk of danger from the backing engine, nor is the fact that she did not look in the direction from which the engine came to be imputed to her as negligence as matter of law. At the most it was but a circumstance to be considered by the jury in determining the question of negligence in fact as the judge charged.

But, again, all the evidence shows that the deceased had crossed track three in safety, whatever apparent danger she was in being from the train on track four, and that her collision with the pusher was in consequence of her struggle to release herself from the grasp of the baggageman. And the evidence warrants the conclusion that she was in a position where she was in no danger from the pusher when Bolger seized her, and that but for that act, which, evidently being misunderstood by her, surprised and excited her, she would not have come in contact with the engine. In this view of the case

the question whether she used due care in crossing the track is immaterial. So, also, is the question whether the bell on the pusher was rung, a question which the appellant's counsel contends was erroneously left to the jury, inasmuch as there was no sufficient evidence that it was not rung.

The defendant's counsel asked the court to charge that if they found that the deceased passed on to track four, and was there when Bolger undertook to get her off, she, by her voluntary act, put herself in danger, and the plaintiff cannot recover. The request was refused and the defendant excepted. If the deceased had been injured by the engine on track four, the request would have been pertinent, but as she received no injury from that source, the refusal was proper.

The defendant's counsel strenuously insists that the court erred in refusing to charge that there was no evidence that the life of the deceased was of any pecuniary value to her father. The request seems to have been based upon the evidence tending to show that the father had abandoned his family years before, that he had not supported his daughter, and that his family did not know whether he was dead or alive. If the father is living the most that can be claimed from his conduct is that he had emancipated his child, or that the child, by her father's consent, had become entitled to the fruits of her labor for her own use. But if that be the case, or if the father be dead, does it follow that there can be no recovery? The statute gives the right of action for the benefit of the next of kin, where there is no husband or wife of the deceased person. The term "next of kin" includes brothers and sisters, or there being none surviving, the children of brothers and sisters. Yet relatives of those classes have no legal claim to what the deceased might have earned; the only basis on which they can claim to have sustained "pecuniary injuries" resulting from the death of the deceased, is that if the deceased had lived and accumulated property they would have been entitled to her unbequeathed assets on her death. And the statute directs the recovery to be distributed as such assets. (Code of Civil Pro., § 1903.) In this view of the case it seems to be immaterial, so far as the right of action by the administrator is concerned, whether the father is living, or whether, if living, he is entitled to receive the earnings of his child. Those questions do

not affect the right of recovery or its amount. They are material for the purposes of distribution only.

The verdict was for $3,500. We do not think we would be justified in setting it aside as excessive. The learned judge before whom the cause was tried did not so regard it. The evidence authorized the jury to find that the deceased, just advancing into early womanhood, was bright, intelligent, healthy, active and self-reliant. The question of damages was peculiarly for the jury, and we are not aware of anything in the case to justify the conclusion that in fixing the amount they were influenced by an improper motive.

The judgment and order should be affirmed.

HAIGHT and BRADLEY, JJ., concurred.

BARKER, J. (dissenting):

I am of the opinion that a new trial should be granted for the reason that the damages are excessive, being wholly unsupported by the evidence bearing on that question. The record discloses that the defendant presented this point to the consideration of the trial court on its motion for a new trial on the minutes. If the party against whom a verdict is rendered claims that the same is excessive or unsupported by the evidence, and presents the question to this court on a case containing the evidence, we have the power and it is our duty to consider and determine the question, applying the rule applicable in such cases. (*Houghkirk* v. *Delaware and Hudson Canal Co.*, 92 N. Y., 219; *Ross* v. *The N. Y. C. and H. R. R. R. Co.*, Fourth Dept., decided March, 1884, and not reported; *Mandeville* v. *Marvin*, 30 Hun, 282.)

On the argument my mind received a very distinct impression that there is no reasonable measure, between the injuries sustained by the father of the deceased and the compensation awarded him by the jury. A further and more careful consideration of this subject, has altogether confirmed my first impressions, and I shall attempt to show that they are sustained by reason and authority.

The verdict is for the sole benefit of the father of the deceased. On the trial it was assumed that he was then alive, and the judge in express terms instructed the jury that the father was the next of kin of the deceased, and they were to give him by their verdict a

just and fair compensation for the pecuniary injury he had suffered by reason of the death of his daughter. The deceased being a minor, her father had a legal right to her services during her minority, and as the jury have found by their verdict that her death happened by the negligence of the defendant, as the sole cause, he was entitled as a matter of law to a nominal verdict, but nothing more, unless he made proof that he had suffered a pecuniary loss in consequence of the death of his daughter. If he sustained any such loss it was susceptible of proof and the law exacted its production. The law does not presume that the next of kin of a deceased person has sustained an actual pecuniary loss by reason of his death. As has been stated, where the next of kin is the father and the deceased a minor, then a recovery in a nominal sum is proper, where the negligence of the defendant is the sole cause of the death, for such a verdict simply vindicates his legal right to the services of his child during minority. (Mayne on Damages [Wood's ed.], chap. 2, p. 5.)

In this case there was no proof of special damages or definite loss capable of being established with a proximate accuracy, such as funeral expenses, which might have been allowed if paid or incurred by the father. (*Murphy* v. *The N. Y. C. and H. R. R. R. Co.*, 88 N. Y., 446.) The damages therefore which the father sustained, if any, were all of a prospective character. The deceased, at the time of her death, did not reside with her father, and he did not at that time claim her services, and by reason of her age and inexperience, she was incapable of earning anything beyond a reasonable support and the expenses of her education. The elements from which the jury in this case might have assessed the father's prospective damages, consisted of the age and intelligence of the deceased, and also of the age, health, habits, occupation and financial situation of her father. As to the deceased, everything was proved which the rule requires; as to the father, nothing whatever on these subjects was disclosed by the evidence. The jury were left in utter ignorance on each one of these material and necessary points of inquiry. If alive, proof could have been made on each one of these vital questions, and it was incumbent on the plaintiff to produce the same. At the time of the trial his whereabouts was unknown. Nine years previous thereto he had abandoned his wife and family and left them to their own resources for support, and

since that time none of them have seen or heard one word from him. The rule is, and it has been so adjudged in several cases, that the burden of proof in this class of cases is upon the plaintiff to prove the pecuniary injury, and to establish such facts as would enable the jury to determine what would be a fair and just compensation with reference thereto to the next of kin, to entitle the plaintiff to recover more than nominal damages, and that the jury must, in fixing a sum as such damages, be governed by the weight of evidence before them. (*McIntyre* v. *The New York Central Railroad*, 37 N. Y., 287; *Houghkirk* v. *D. and H. C. Co.*, 92 id., 225; *Tilley* v. *Hudson River Railroad Company*, 24 id., 479.)

The plaintiff omitted to make proof concerning the age, health, habits of life, and present financial condition of the father, and because of such omission the recovery should have been limited to nominal damages, and all above that sum is unsupported by the evidence and is excessive. The age as well as the condition of health of a claimant are elements to be considered in estimating his prospective damages. If he be advanced in years, and in feeble health, his damages would be greatly less than they would be if he were in the prime of life, strong and vigorous. Without proof on these points a jury cannot reason and deliberate on the subject of damages, and, in such a case, if more than a nominal sum be given the same must be the result of conjecture, and can be nothing more than a guess. If we uphold this verdict, we do, in effect, say that the jury are omnipotent in this class of cases, and that there is no rule of law to be observed by them in assessing damages. The statute, in terms, restricts the damages to a fair and just compensation for the pecuniary injury sustained by the person for whose benefit the action is brought. The jury knew nothing concerning the father, who is entitled to the large verdict which they have rendered in his favor, except that many years before the trial, without cause, he deserted his wife and infant children who had the strongest claims on him for protection, support and education. The family relation ceased to exist between him and them, and so long as he continued to abandon the deceased, he had no just claim to her services. By reason of his inexcusable conduct she was manumitted from his control and authority, at least until such time as he assumed the position and discharged the duties of a parent, and

there is no reason for holding that he suffered prospective damages in consequence of her death. (*Canovar* v. *Cooper*, 3 Barb., 115; *Lehigh Iron Co.* v. *Rupp*, 100 Pa., 95.)

I am in favor of reversing the judgment and granting a new trial.

Judgment and order affirmed.